UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Civil Action No. 99-2560

CIV-MORENO

H. ROBERT HOLMES, AS TRUSTEE FOR )
THE  HOLMES FAMILY TRUST, On Behalf )
of Himself and All Others Similarly )
Situated, )
)
                        Plaintiff, )
)
     vs. )
)
DALE S. BAKER, GARLAN BRAITHWAITE, )
and AVIATION SALES COMPANY, )
)
                        Defendants. )
)
_____ )

MAGISTRATE JUDGE
DUBÉ

## PLAINTIFF'S CLASS ACTION COMPLAINT

Plaintiff, individually and on behalf of all other persons similarly situated, by his undersigned counsel, alleges upon personal knowledge as to his own acts and upon the investigation conducted by his counsel, which included, among other things, a review of the public announcements made by defendants, Securities and Exchange Commission ("SEC") filings, press releases, media reports and discussions with consultants and others in the industry regarding Aviation Sales Company ("Aviation Sales" or the "Company") as follows:

### NATURE OF THE ACTION

1.   This is a class action on behalf of all persons who purchased the common stock of Aviation Sales during the period June 11, 1999 through and including September 17, 1999 (the "Class Period").  Aviation Sales describes itself as the leading independent provider of fully integrated aviation inventory and

maintenance services, including aircraft heavy maintenance, component repair and overhaul, leasing, the distribution of aircraft spare parts and the manufacture of new components for major commercial airlines, original equipment manufacturers and maintenance and repair facilities throughout the world.  The defendants are the Company and two of its top executive officers.

2.    During the Class Period, defendants represented to the investing public that Aviation Sales expected an increase in demand for its services the following areas: 1) maintenance, repair and overhaul ("MR&O"); 2) aircraft spare parts redistribution; and 3) manufacturing.  However, as of June 11, 1999, Aviation Sales' management information systems actually revealed declining sales during the third quarter of 1999 in these areas, especially in MR&O, due to order slowdowns and cancellations and the extension of delivery dates on many orders. Further, defendants' management information systems revealed increasing expenses due to increased inventory levels and delays in opening new facilities in Dallas, Minneapolis, Greensboro, Mexico and Amsterdam.

3.    Rather than reveal that demand was weakening and delivery dates were being extended, defendants lied to potential investors and represented that the Company expected increasing demand and significant growth opportunities for MR&O, manufacturing, and aircraft spare parts redistribution.  When the Company's stock price began to decline in late August 1999, defendants affirmatively represented to the public that it was

unaware of any undisclosed corporate activities or developments that would have caused a drop in the Company's stock price.

4.    These representations were blatantly false.  Defendants knew that business in its MR&O unit would not meet the Company's expectations for the third quarter of 1999.  Further, the Company knew that it would not be able to sell or lease two Airbus A300 aircraft the Company had converted from passenger to cargo aircraft during the third quarter of 1999.  In fact, the Company knew that its failure to lease or sell the two aircraft before the end of the third quarter would decrease the Company's revenues by $200,000 - $250,000 per aircraft and would also substantially increase the Company's inventory costs.

5.    However, defendants failed to reveal these material facts during the Class Period, because the Company was actively trying to accomplish a merger or acquisition using Aviation Sales' common stock as consideration and the revelation of this information was sure to negatively impact the price of the Company's common stock, thereby jeopardizing any chances of completing a merger or acquisition using stock as consideration.

6.    As a result of defendants' false representations and omissions, the price of Aviation Sales' common stock was artificially inflated during the Class Period.  Defendants Dale S. Baker ("Baker") and Garlan Braithwaite ("Braithwaite"), who were the two most senior officers of the Company, knew of the undisclosed facts but failed to disclose them.

7.    Then, on September 17, 1999, an analyst from Salomon Smith Barney ("SSB") issued a research report stating that after

discussions with management, SSB did not expect the Company to meet expectations for the third quarter of 1999.

8.    The next day, on September 18, 1999, the Company announced that instead of the projected earnings per share of $0.70 for the third quarter, management expected fully diluted earnings per share to be between $0.48 and $0.50.  Defendants revealed: 1) that the results in its MR&O unit would be lower than expected, mainly due to order cancellations, delivery extensions, and a drop in Boeing's production levels, which was affecting Boeing's suppliers; 2) that the Company had been unable to lease or sell two of its recently converted A300 aircrafts; 3) higher expense levels and inventory costs; and 4) delays in opening new facilities in Dallas, Minneapolis, Greensboro, Mexico and Amsterdam.

9.    These disclosures directly contradicted all of the information provided by defendants to the market during the Class Period.  Not surprisingly, the revelation of this shocking information caused the price of Aviation Sales' stock to lose more than 36% of its value in two trading days, falling from $29 3/8 on Thursday September 16, 1999 to $18 11/16 on Monday September 20, 1999.

10.   As set forth herein, each of the positive statements and omissions about Aviation Sales' business during the Class Period was materially false and misleading.

## JURISDICTION AND VENUE

11.   This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Securities Exchange Act

4

of 1934 (the "Exchange Act"), 15 U.S.C. §78aa and 28 U.S.C. §1331.  The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b), 78t(a) and the rules and regulations promulgated thereunder by the SEC, including Rule 10b-5, 17 C.F.R. §240.10b-5.

12.  Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(b).  Many of the acts and transactions constituting the violations of law alleged herein, including the preparation and dissemination to the investing public of false and misleading information, occurred in substantial part in this Judicial District.  In addition, Aviation Sales maintains its principal executive offices within this Judicial District.

13.  In connection with the acts, conduct and other wrongs alleged in this Complaint, the defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including the mails, telephone communications and the facilities of national securities exchanges.

## THE PARTIES

14.  As set forth in the attached certification, plaintiff H. Robert Holmes, as Trustee for the Holmes Family Trust, purchased shares of Aviation Sales during the Class Period and was damaged thereby.

15.  Defendant Aviation Sales is incorporated in the state of Delaware and maintains its principal place of business at 6905 N.W 25th Street, Miami, Florida 33122.  As of August 10, 1999, Aviation Sales had approximately 15 million shares of common

stock outstanding.  Aviation Sales common stock was, during the
Class Period, actively traded on the New York Stock Exchange
("NYSE").  Aviation Sales describes itself as the leading
independent provider of fully integrated aviation inventory and
maintenance services, including aircraft heavy maintenance,
component repair and overhaul, leasing, the distribution of
aircraft spare parts and the manufacture of new components for
major commercial airlines, original equipment manufacturers and
maintenance and repair facilities throughout the world.
According to Aviation Sales' filings with the SEC, through its
"management information systems", the Company is able to track
demand, inventory turnover, pricing and market availability of
aircraft and aircraft spare parts.  According to the Company, its
continued investment in the development of its management
information systems is a key factor in maintaining its
competitive advantage.

16.  Defendant Baker was, at all relevant times, the
President and Chief Executive Officer of Aviation Sales and
Chairman of Aviation Sales' Board of Directors.  Because of his
position with Aviation Sales, Baker knew or recklessly
disregarded the adverse, non-public information about its
business, finances, products, markets and present and future
business prospects readily available to him via access to
internal corporate documents (including Aviation Sales' periodic
reports, operating plans, budgets and forecasts, reports of
actual operations, and management information systems),
communications and connections with other corporate officers and

employees, attendance at Board of Directors' and management
meetings and committees thereof and via reports and other
information provided to him in connection with his duties.
Defendant Baker signed Aviation Sales' June 11, 1999 Registration
Statement and Prospectus ("Prospectus").

17.   Defendant Braithwaite, was, at all relevant times, the
Vice President-Finance and Principal Accounting Officer of
Aviation Sales.  Because of his position with Aviation Sales,
Braithwaite knew or recklessly disregarded the adverse, non-
public information about its business, finances, products,
markets and present and future business prospects readily
available to him via access to internal corporate documents
(including Aviation Sales' periodic reports, operating plans,
budgets and forecasts, reports of actual operations, and
management information systems), communications and connections
with other corporate officers and employees, attendance at
management meetings and committees thereof and via reports and
other information provided to him in connection with his duties.
Defendant Braithwaite signed Aviation Sales' June 11, 1999
Prospectus.

18.   Unless otherwise noted, the individuals named as
defendants in ¶¶16-17 above, shall hereinafter be collectively
referred to as the "Individual Defendants."

### CONTROLLING PERSONS

19.   The Individual Defendants, by reason of their executive
positions with Aviation Sales, Board membership and/or
representation, and/or their ownership of Aviation Sales common

7

stock, were controlling persons of Aviation Sales and had the power and influence, and exercised the same, to cause Aviation Sales to engage in the conduct complained of herein. Aviation Sales, in turn, controlled each of the Individual Defendants.

### MOTIVE AND OPPORTUNITY

20. Defendants Baker and Braithwaite, because of their positions with the Company, controlled and/or possessed the power and authority to control the contents of quarterly reports, press releases and presentations to securities analysts and thereby the investing public. Defendants Baker and Braithwaite prepared or were provided with copies of the Company's press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them but not to the public, these defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations which were being made were then materially false and misleading.

21. Each of the defendants is liable as a primary violator, for making materially false and misleading statements, and for participating in a fraudulent scheme that operated as a fraud or deceit on purchasers of Aviation Sales stock during the Class Period. The defendants pursued a fraudulent scheme in furtherance of their common goal, i.e., inflating the price of Aviation Sales stock by making materially false and misleading

8

statements and concealing material adverse information.   The
fraudulent scheme was designed to and did: (i) deceive the
investing public, including plaintiff and members of the Class;
(ii) artificially inflate the price of Aviation Sales stock
during the Class Period; and (iii) cause plaintiff and members of
the Class to purchase Aviation Sales stock at inflated prices.

22.   Defendant Baker's and Braithwaite's motive to engage in
this conduct included their desire to artificially inflate the
price of Aviation Sales' common stock and to cover up and conceal
Aviation Sales' deteriorating business and prospects in order to
accomplish a merger or acquisition, during the Class Period,
using Aviation Sales' common stock as consideration.   As
detailed below, in the Company's press release of September 18,
1999, defendant Baker admitted that the Company's goal had been
to accomplish a merger or acquisition using Aviation Sales'
common stock:

> We have been very active in our review and
> consideration of merger and acquisition opportunities.
> However, while we have explored numerous potential
> transactions, we have not recently found acquisition
> targets at prices at which we believed it made sense
> for our business.  This, in part, has led us to adopt a
> strategy of build vs. buy to accomplish part of our
> future growth; hence the development of several of our
> new facilities.  Additionally, we actively negotiated
> during the third quarter with two large transaction
> partners.  While these discussions have been positive,
> we believe that given the recent activity in the market
> price of our common stock, these transactions will
> probably not be possible at this time.

### DEFENDANTS' FALSE AND MISLEADING STATEMENTS AND FRAUDULENT COURSE OF CONDUCT DURING THE CLASS PERIOD

23.   On June 11, 1999, Aviation Sales issued a Prospectus
registering 2 million shares of common stock to be sold in a

secondary offering on or about June 16, 1999.  In the Prospectus,

the Company represented:

> Due to trends currently affecting our industry, we
> believe that <u>the demand for maintenance and repair
> services from large, fully integrated independent
> service providers such as Aviation Sales will continue
> to increase in the future</u>.

> *   *   *

> We believe that the trends currently affecting our
> industry are:

> GROWTH IN MARKET FOR AIRCRAFT SPARE PARTS AND
> MAINTENANCE AND REPAIR SERVICES.  The Boeing 1998
> Current Market Outlook report projects that: the
> worldwide fleet of commercial airplanes will more than
> double from 1997 to 2017; the number of cargo jet
> aircraft will increase significantly between 1997 and
> 2017; and the aircraft fleet will continue to age.

> We believe that a combination of these factors will
> <u>increase the demand</u> for aircraft spare parts from the
> redistribution market and for maintenance and repair
> services.

> *   *   *

> [I]ncreases in passenger travel and the number of
> aircraft in service <u>increase the demand for
> manufacturing services</u>.  Consequently we foresee the
> manufacture of aircraft parts as a <u>significant growth
> opportunity</u> for us, and as an integral component of our
> expansion strategy. (emphasis added).

     24.  These representations were false and misleading and

omitted material information concerning Aviation Sales' business.

At the time the above representations were made, defendants knew

business in the Company's MR&O (also called manufacturing and

flight surfaces repair) unit was experiencing a dramatic slowdown

at the end of the second quarter of 1999 and that business was

not expected to pick up during the third quarter.  Orders from

Boeing, one of Aviation Sales' largest customers had been

10

significantly reduced and the Company was experiencing order

cancellations and delivery date extensions from many of its other

large customers.

25.  On August 20, 1999, before the open of the market,

defendants caused Aviation Sales to issue the following

clarification of disclosures in its Report on Form 10-Q for the

quarter ended June 30, 1999, which was originally filed with the

SEC on August 13, 1999:

> The Company also commented today, in response to
> questions which have been raised by the investment
> community, regarding its June 30, 1999 financial
> statements:
>
> Increase in Inventory:  In response to questions
> regarding the $77.6 million growth of its inventory
> between December 31, 1998 and June 30, 1999, the
> Company commented that approximately $15.0 million of
> that growth related to the Company's continuing
> investment during the period in five Airbus a-300B4
> aircraft, increasing the Company's investment in those
> airplanes to $45.9 million. . . . . The Company stated
> that the increase in the inventory levels in its
> distribution operations during the first half of 1999
> was consistent with its objective of maintaining its
> world leadership position in the redistribution of
> airframe parts and with its intended goal of becoming a
> world leader in the redistribution of engine parts.
>
> Growth in Accrued Expenses:  In response to questions
> regarding the $11.6 million increase in the Company's
> accrued expenses between March 31, 1999 and June 30,
> 1999, the Company stated that the increase was
> primarily due to a $3.4 million accrual for interest
> payments due on the Company's bonds on August 19, 1999
> and a $9.7 million accrual associated with the purchase
> of four aircraft engines for which the Company had
> taken possession of the engines at the end of the
> quarter but had not yet been billed, offset by
> reduction in other accrued expense categories during
> the period.

26.  Defendants' representations regarding inventory and

expenses were false and misleading, and omitted material

information regarding the Company's business, because defendants knew, but failed to disclose, that: 1) inventory was growing because the Company was experiencing a drastic slowdown in its MR&O unit due to a cutback in orders from Boeing, one of Aviation Sales' largest customers and order cancellations and delivery date extensions from many of Aviation Sales' other large customers.  Further, the Company knew that it would not be able to sell or lease the two converted Airbus A-300 aircraft before the fourth quarter of 1999, and therefore, would not receive any leasing revenues from those craft.  Through its management information systems, defendants learned that there was a surplus supply of A300 aircraft being offered by several leasing companies, which decreased the probability that Aviation Sales would be able to lease or sell both of its A300 aircrafts during the third quarter.  The Company knew that its failure to lease or sell the two aircraft before the end of the third quarter would negatively affect the Company's revenues and would dramatically increase the Company's inventory costs.  Finally, the Company knew, but failed to disclose, that its expenses were skyrocketing and it was experiencing delays in opening five new facilities which would have an adverse effect on its results for the third quarter of 1999.

27.  On August 20, 1999, the price of Aviation Sales' common stock closed at $37 1/4.  By August 26, 1999, the price had declined to $31 9/16, a drop of more than 15% in less than a week.

28.   In order to arrest the rapid decline of its stock price, on August 26, 1999, defendants caused Aviation Sales to issue a press release headlined "Aviation Sales Says It's Unaware of Reason for Stock Drop."  The release stated:

> Aviation Sales Company (NYSE:AVS) today announced it is unaware of any undisclosed corporate activities or developments that would have caused the recent unusual market activity in the Company's stock.

Defendants hosted a conference call with institutional investors, money and portfolio managers, large shareholders, and securities analysts immediately following the issuance of this press release to assure the financial community that it knew of no reason for the recent decrease in the price of its stock.

29.   Defendants' representations were directly disseminated to the market and became part of the total mix of information affecting Aviation Sales' shares.  Based upon these representations, on August 27, 1999, the Company's stock price rebounded to $33 1/8 per share.

30.   However, defendants' representations that they were unaware of any undisclosed conditions that would have caused the Company's stock price to decline were false and misleading for the reasons set forth in paragraph 26.

### THE TRUTH IS REVEALED

31.   On September 17, 1999, before the market opened, L. Keith Mullins of SSB issued a research report on Aviation Sales. The report stated:

> [R]ecent discussions with management raise concern about whether AVS is operating on-track to deliver our $0.71 earning per share estimate for the third quarter versus the $0.63 reported last year.  Two non-core

13

issues may lower reported results.  First, the recent
expansions in its MR&O operations may have incurred
larger than expected initial start-up expenses.  While
we have factored higher start-up costs into our
projections, these expenses may have exceeded our prior
estimates.  Second we surmise that the company may be
experiencing delays in the lease or sale of its five
Airbus A-300 aircraft.  As of today (September 16), the
company has only recently leased one of these aircraft.
We assumed two sale/leases by the end of the third
quarter.  The failure to execute a lease/sale of these
refurbished aircraft has two financial implications.
First, revenues of $200,000-250,000/month per leased
aircraft will be lost.  Second, the cost of higher
inventories must be absorbed.  While we are not
lowering our estimates at this time, we expect to have
more clarity on the potential earnings impact of these
two issues by the end of the week.

32.   The SSB report, revealing previously undisclosed
material information about Aviation Sales' business, caused the
price of Aviation Sales' common stock to fall almost 30% in a
single day from $29 3/8 to $21 on trading of 2.85 million, or
more than 13 times the three month daily average.

33.   The next day, on Saturday, September 18, 1999,
defendants caused the Company to issue a press release disclosing
that its revenues for the quarter ended September 30, 1999 would
be drastically below expectations.  The Company announced:

Aviation Sales Company (NYSE: AVS) today commented on
its expected third quarter and 1999 results of
operations.  The Company stated that it anticipates
1999 per share earnings growth to be in a range of 15%
to 17% compared to 1998 earnings per share, and that
based upon this level of growth, the Company expects
fully diluted earnings per share to be between $.48 and
$.50 on revenues of approximately $170 million for the
third quarter of 1999 and $2.30 and $2.35 on revenues
of approximately $718 million for the 1999 fiscal year.

                    *    *    *

[T]he results in our manufacturing and flight services
repair operations will not meet our plan for the 1999
third quarter and fiscal year.  We believe that the

14

> drop in Boeing's production levels are starting to be
> felt through the supply chain, and while we had
> anticipated this slow down in our manufacturing
> operations during the fourth quarter of 1999 and into
> the 2000, we did not anticipate the order cancellations
> and delivery push-outs which we have experienced to
> date during the third quarter.  Further, in our flight
> surfaces repair and overhaul operation, we have had
> higher expense levels than we anticipated.  These
> expenses were primarily in conjunction with investments
> that we made in new facilities and equipment to support
> future growth in this business.
>
>         *   *   *
>
> During 1998, we purchased five (5) A300 aircraft for
> conversion from passenger to cargo configuration.  Two
> of these airplanes have been converted to date, with
> the third scheduled for completion by the end of the
> third quarter.  Our 1999 business plan had projected
> that two of these aircraft would be leased during the
> third quarter and that all three of these aircraft
> would be leased during the fourth quarter.  While we
> are in discussions with several parties interested in
> leasing these aircraft, the timing of potential
> transactions is likely to be delayed from what we
> anticipated, thereby adversely impacting our 1999 third
> quarter and full-year operating results. . . .

In the same announcement, the Company also revealed that it

expected to report slightly higher interest rates and higher

borrowing during the third quarter which would adversely impact

third quarter's results.  Further, the Company stated that it was

experiencing delays in opening five new facilities in Dallas,

Minneapolis, Greensboro, Mexico and Amsterdam.  In addition,

although the Company had been actively considering merger and

acquisition transactions, the recent decline in the market price

of the Company's stock now made such transactions improbable.

    34.  On September 20, 1999, the first trading day after

defendants' press release, the price of the Company's common

stock fell an additional 11% from 21 to 18 11/16 on trading of

approximately 2 million shares, or 10 times the three month daily average.

## CLASS ACTION ALLEGATIONS

35.   Plaintiff brings this action on his own behalf and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class (the "Class") of all other persons who purchased Aviation Sales common stock from June 11, 1999 through and including September 17, 1999 (the "Class Period"). Excluded from the Class are the Individual Defendants, members of the immediate families of the Individual Defendants, and any entities in which any of the defendants have a controlling interest.

36.   The members of the Class for whose benefit this action is brought are dispersed throughout the United States, and are so numerous that joinder of all Class members is impracticable. While the exact number of Class members can only be determined through appropriate discovery, plaintiff believes that there are thousands of Class members.  During the Class Period, approximately 15 million shares of Aviation Sales common stock were outstanding and were actively traded on an impersonal and efficient trading exchange during the Class Period.

37.   Plaintiff's claims are typical of the claims of the other members of the Class, and plaintiff and all members of the Class sustained damages as a result of the defendants' wrongful conduct complained of herein.

38.   Plaintiff is a representative party who will fairly and adequately protect the interests of the other members of the

16

Class, and has retained counsel competent and experienced in class action securities litigation.  Plaintiff has no interests antagonistic to, or in conflict with, the Class he seeks to represent.

39.  A class action is superior to other available methods for the fair and efficient adjudication of the claims asserted herein.  Furthermore, because the damages suffered by the individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members to individually seek redress for the wrongful conduct alleged herein, and the likelihood of individual Class members prosecuting separate claims is remote.

40.  This action will allow for the orderly and expeditious administration of the Class claims, produce economies of time, effort and expense, and ensure uniformity of decisions.  Plaintiff anticipates no unusual difficulties in the management of this action as a class action.

41.  There are questions of law and fact common to all Class members which predominate over any questions affecting any individual members of the Class.  Among the questions of law and fact which are common to the Class are:

(a)  Whether the federal securities laws were violated by the defendants' acts as alleged herein;

(b)  Whether the documents, releases, reports and/or statements disseminated to the investing public and to Aviation Sales shareholders during the Class Period omitted or

misrepresented material facts about the financial condition,
business and income of Aviation Sales;

(c)   Whether the defendants acted with knowledge or
reckless disregard of the truth in omitting to state and/or
misrepresenting material facts;

(d)   Whether the market price of Aviation Sales common
stock was artificially inflated during the Class Period due to
the non-disclosures and/or material misrepresentations complained
of herein;

(e)   Whether the defendants participated in and pursued
the common course of conduct complained of herein; and

(f)   Whether the members of the Class have sustained
damages and, if so, what is the proper measure thereof.

42.   Plaintiff will rely, in part, upon the presumption of
reliance established by the fraud-on-market doctrine.  The market
for Aviation Sales common stock was at all times an efficient
market for the following reasons, among others:

(a)   Aviation Sales met the requirements for listing,
and was listed on the NYSE;

(b)   As a regulated issuer, Aviation Sales filed
periodic public reports with the SEC and the NYSE;

(c)   The volume of trading in Aviation Sales's common
stock was substantial during the Class Period;

(d)   Aviation Sales was followed by various securities
analysts who wrote reports which were available through various
automated data retrieval services;

(e)   Aviation Sales disseminated information on a market-wide basis through various electronic media services, including issuing press releases through the <u>Business Wire</u> news service; and

(f)   The market price of Aviation Sales common stock reacted efficiently to new information entering the market.

43.   The foregoing facts clearly indicate the existence of an efficient market for trading of Aviation Sales common stock and make applicable the fraud-on-the-market doctrine.  Similarly, plaintiff and the other members of the Class are entitled to a presumption of reliance with respect to the misstatements and omissions alleged herein.

<b>COUNT I</b>

<b>VIOLATION OF SECTION 10(b) OF THE SECURITIES<br>EXCHANGE ACT AND RULE 10b-5 PROMULGATED THEREUNDER</b>

44.   Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

45.   Throughout the Class Period, the defendants, singly and in concert, directly or indirectly, engaged in a common plan, scheme and course of conduct described herein, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and a course of business which operated as a fraud upon plaintiff and the other members of the Class; made various false statements of material facts and omitted to state material facts to make the statements made, in light of the circumstances in which they were made, not misleading; and employed manipulative

or deceptive devices and contrivances in connection with the purchase and sale of Aviation Sales common stock.

46. The purpose and effect of the defendants' plan, scheme and course of conduct was to artificially inflate and maintain the market price of Aviation Sales common stock.

47. The Individual Defendants, as senior officers and/or directors of Aviation Sales, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Aviation Sales personnel to the SEC, plaintiff, and other members of the Class.

48. Aviation Sales had actual knowledge of the material omissions and/or the falsity of material statements set forth above, and intended to deceive plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when it failed or refused to ascertain and disclose the true facts to the SEC, plaintiff, and the other members of Class.

49. As a result of the foregoing, the market price of Aviation Sales common stock was artificially inflated during the Class Period. In ignorance of the falsity of the reports and statements, and the deceptive and manipulative devices and contrivances employed by the defendants, plaintiff and the other members of the Class relied, to their damage, on the reports and statements described above and/or the integrity of the market

20

price of Aviation Sales common stock during the Class Period in purchasing Aviation Sales common stock at prices which were artificially inflated as a result of the defendants' false and misleading statements.

50.   Had plaintiff and the other members of the Class known of the material adverse information which the defendants did not disclose, they would not have purchased Aviation Sales common stock at the artificially inflated prices that they did.

51.   The defendants' concealment of this material information served only to harm plaintiff and the other members of the Class who purchased Aviation Sales common stock in ignorance of the financial risk to them as a result of such material misrepresentations and nondisclosures.

52.   As a result of the wrongful conduct alleged herein, plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

53.   By reason of the foregoing, the defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder and are liable to plaintiff and the other members of the Class for the substantial damages which they suffered in connection with their purchase of Aviation Sales common stock during the Class Period.

## COUNT II

### VIOLATION OF SECTION 20(a)
### OF THE SECURITIES EXCHANGE ACT

54.   Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

21

55.   During the Class Period, the Individual Defendants, by
virtue of their positions as officers and/or directors of
Aviation Sales and their specific acts, were controlling persons
of Aviation Sales within the meaning of Section 20(a) of the
Exchange Act.

56.   Each of the Individual Defendants' positions made them
privy to, and provided them with actual knowledge of, the
material facts which Aviation Sales concealed from plaintiff and
the other members of the Class during the Class Period.

57.   The Individual Defendants had the power, authority and
influence, and exercised the same, to cause Aviation Sales to
engage in the unlawful conduct and practices complained of herein
by causing Aviation Sales to disseminate the false and misleading
information referred to above.

58.   By virtue of the foregoing, the Individual Defendants
have violated Section 20(a) of the Exchange Act.   As a direct and
proximate result of these defendants' wrongful conduct, plaintiff
and the other members of the Class suffered damages in connection
with their purchase of Aviation Sales common stock during the
Class Period.

### NO STATUTORY SAFE HARBOR

59.   The federal statutory "safe harbor" provided for
forward-looking statements under certain circumstances does not
apply to any of the allegedly false, forward-looking statements
pleaded in this Complaint.   The statements alleged to be false
and misleading herein all relate to then-existing facts and
conditions.   In addition, to the extent certain of the statements

alleged to be false may be characterized as forward-looking,
there were no meaningful cautionary statements identifying the
important factors that caused the actual results to differ
materially from those in the purportedly forward-looking
statements. Alternatively, to the extent that the statutory safe
harbor does apply to any forward-looking statement pleaded, the
defendants are liable for those false forward-looking statements
because at the time each of those forward-looking statements was
made and so identified, the speaker knew the forward-looking
statement was materially false and misleading, and/or the
forward-looking statement was authorized and/or approved by an
executive officer of Aviation Sales, who knew that those
statements were false when made.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of himself and the other
members of the Class, pray for judgment against the defendants as
follows:

A. Declaring this action to be properly maintainable as a
class action pursuant to Rule 23 of the Federal Rules of Civil
Procedure and declaring plaintiff to be a proper class
representative;

B. Declaring and determining that the defendants violated
the federal securities laws by reason of their conduct as alleged
herein;

C. Awarding monetary damages against all of the
defendants, jointly and severally, in favor of plaintiff and the
other members of the Class for all losses and damages suffered as

a result of the acts and transactions complained of herein,
together with prejudgment interest from the date of the wrongs to
the date of the judgment herein and post-judgment interest and
costs;

    D.    Awarding plaintiff the costs, expenses, and
disbursements incurred in this action, including reasonable
attorneys' and experts' fees; and

    E.    Awarding plaintiff and the other members of the Class
such other and further relief as the Court may deem just and
proper in light of all the circumstances of this case.

**JURY DEMAND**

    Plaintiff demands a trial by jury of all issues so triable.

Dated:   September 23, 1999

                             **MILBERG WEISS BERSHAD HYNES**
                               **& LERACH LLP**

                         By: _____
                             Kenneth J. Vianale
                             (Fla. Bar No. 169668)

                         5355 Town Center Road
                         Suite 900
                         Boca Raton, FL  33486
                         Tel:  (561) 361-5000
                         Fax:  (561) 367-8400

                                - and -

                         Steven G. Schulman
                         Samuel H. Rudman
                         One Pennsylvania Plaza
                         49th Floor
                         New York, NY  10119
                         Tel:  (212) 594-5300
                         Fax:  (212) 868-1229

**KAPLAN, KILSHEIMER & FOX LLP**
Robert N. Kaplan
Laurence D. King
Christine M. Comas
805 Third Avenue, 22nd Floor
New York, NY  10022
Tel:  (212) 687-1980
Fax:  (212) 687-7714

**CHERRY & FLYNN**
Myron M. Cherry
Matthew D. Tanner
30 N. LaSalle Street
Chicago, IL   60602
Tel:  (312) 372-2100
Fax:  (312) 853-0279

**Attorneys for Plaintiff**