UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 99-2560-CIV-MORENO/DUBÉ



FILED BY _____ D.C.

02 MAY 10 PM 3: 16

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FL - MIAMI

H. ROBERT HOLMES, As Trustee for the
Holmes Family Trust, On Behalf of Himself and
All Others Similarly Situated,

        Plaintiff,

    v.

DALE S. BAKER, GARLAN BRAITHWAITE,
HAROLD M. WOODY, JOSEPH E.
CIVILETTO, GEORGE F. BAKER III,
JEFFREY N. GREENBLATT, AVIATION
SALES COMPANY and ARTHUR ANDERSEN
LLP,

        Defendants.

**STIPULATION OF SETTLEMENT**

{M1790587;4}

# TABLE OF CONTENTS

**Page**

I.   THE LITIGATION ..................................................................................................1

II.  DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY ....................................2

III. CLAIMS OF THE LEAD PLAINTIFFS AND BENEFITS OF SETTLEMENT ...................3

IV. TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT .................................4

    1.   Definitions.....................................................................................................4

    2.   The Settlement ...............................................................................................9

    3.   Notice Order and Settlement Hearing............................................................14

    4.   Releases........................................................................................................14

    5.   Administration and Calculation of Claims, Final Awards and Supervision and
       Distribution of Settlement Fund.....................................................................16

    6.   Representative Plaintiffs' Counsel's Attorneys' Fees and Reimbursement of
       Expenses .......................................................................................................18

    7.   Conditions of Settlement, Effect of Disapproval, Cancellation or Termination...............20

    8.   Miscellaneous Provisions...............................................................................25

This Stipulation of Settlement (the "Stipulation"), dated as of May 6, 2002, is made and entered into by and among the following Settling Parties (as further defined in Section IV hereof) to *Holmes v. Dale S. Baker, et al.,* Southern District of Florida, Case No. 99-2560-CIV-MORENO (the "Litigation"): (i) the Lead Plaintiffs (on behalf of themselves and the Class), by and through their counsel of record in the Litigation; and (ii) the Defendants, by and through their counsel of record in the Litigation. The Stipulation is intended by the Settling Parties to fully, finally and forever resolve, discharge and settle the Released Claims (as defined in ¶1.17), upon and subject to the terms and conditions hereof (the "Settlement").

## I. THE LITIGATION

The following cases were commenced in the United States District Court for the Southern District of Florida, Miami Division, on or after September 23, 1999: (1) *Holmes v. Dale S. Baker, et al.*, No. 99-2560-CIV-MORENO; (2) *Greenberg v. Dale S. Baker, et al.*, No. 99-2603-CIV-MORENO; (3) *Feil v. Dale S. Baker, et al.,* No. 99-2965-CIV-MORENO; (4) *Smith v. Dale S. Baker, et al.*, No. 99-2681-CIV-MORENO; (5) *Fowler v. Dale S. Baker, et al.*, No. 99-2710-CIV-GOLD; and (6) *Mica v. Dale S. Baker, et al.*, No. 99-2657-CIV-MORENO. By Order dated January 19, 2000, these actions were consolidated for all purposes under the caption *Holmes v. Dale S. Baker, et al.,* No. 99-2560-CIV-MORENO.

On January 19, 2000, the Court appointed the Holmes Family Plaintiffs as Lead Plaintiffs, and appointed the law firms of Kaplan Fox & Kilsheimer LLP ("Kaplan Fox"), Milberg Weiss Bershad Hynes & Lerach LLP ("Milberg Weiss") and Myron M. Cherry & Associates as Co-Lead Counsel for the Class.

On March 13, 2000, plaintiffs filed an Amended Class Action Complaint for violations of the federal securities laws, which alleged violations of Sections 11 and 15 of the Securities Act of 1933 ("Securities Act") and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934

("Exchange Act"), and Rule 10b-5 promulgated thereunder, against Aviation Sales Company, now known as TIMCO Aviation Services, Inc. ("AVS"), Dale S. Baker, Garlan Braithwaite, Harold M. Woody, Joseph E. Civiletto and Arthur Andersen LLP ("Arthur Andersen"). That complaint was brought on behalf of all persons who purchased or otherwise acquired AVS stock during the period March 26, 1998 through and including January 28, 2000 or purchased AVS stock in a secondary offering which became effective June 10, 1999.

On September 14, 2000, plaintiffs filed a Second Amended Complaint which added George F. Baker, III and Jeffrey N. Greenblatt as defendants and extended the class period to April 30, 1997 through and including April 14, 2000. Defendants moved to dismiss the Second Amended Complaint.

On August 22, 2001, after oral argument, the Honorable Federico Moreno issued an order granting in part and denying in part defendants' motions. The Order denied defendants' motions to dismiss the claims brought under Sections 11 and 15 of the Securities Act, but dismissed the claims brought under Section 10(b) of the Exchange Act with leave to replead, except as to Arthur Andersen, which it dismissed with prejudice with respect to the 10(b) claim.

On September 21, 2001, plaintiffs filed the Third Amended Complaint (the "Complaint"), On October 22, 2001, AVS and the individual defendants ("Individual Defendants"), against whom the 10(b) claims are alleged, filed new motions to dismiss the Section 10(b) and 20(a) claims. Briefing was completed on those motions on January 15, 2002. The settlement set forth in this Stipulation was reached prior to any decision on these motions.

## II. DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

Defendants have denied, and continue to deny, each and every claim and contention alleged by Lead Plaintiffs in the Litigation. Defendants have expressly denied, and continue to deny, all charges of wrongdoing or liability against them arising out of any of the conduct,

statements, acts or omissions alleged, or that could have been alleged, in the Litigation. Defendants have also denied, and continue to deny, *inter alia*, the allegations that Lead Plaintiffs or the Class have suffered damage, that the price of AVS common stock was artificially inflated by reasons of alleged misrepresentations, non-disclosures or otherwise, or that Lead Plaintiffs or the Class were harmed by the conduct alleged in the Litigation.

Nonetheless, Defendants have concluded that further conduct of the Litigation would be protracted and expensive, and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation. Defendants have also taken into account the uncertainty and risks inherent in any litigation, especially in complex cases like the Litigation. Defendants have therefore determined that it is desirable and beneficial to them that the Litigation be settled in the manner and upon the terms and conditions set forth in this Stipulation.

### III. CLAIMS OF THE LEAD PLAINTIFFS AND BENEFITS OF SETTLEMENT

Lead Plaintiffs believe that the claims asserted in the Litigation have merit and that the evidence developed to date supports the claims. However, Plaintiffs' Co-Lead Counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Litigation against Defendants through trial and through appeals. Plaintiffs' Co-Lead Counsel have also taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as the Litigation, as well as the difficulties and delays inherent in such litigation. Plaintiffs' Co-Lead Counsel are also mindful of the inherent problems of proof under and possible defenses to the federal securities law violations asserted in the Litigation. Plaintiffs' Co-Lead Counsel believe that the Settlement set forth in the Stipulation confers substantial benefits upon the Class Members. Based on their evaluation,

Plaintiffs' Co-Lead Counsel have determined that the Settlement set forth in the Stipulation is in the best interests of Lead Plaintiffs and the Class Members.

### IV. TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Lead Plaintiffs (for themselves and the Class) and Defendants, by and through their respective counsel of record, that, subject to the approval of the Court, the Litigation and the Released Claims shall be finally and fully compromised, settled and released, and the Litigation shall be dismissed with prejudice, as to all Settling Parties, upon and subject to the terms and conditions of the Stipulation.

**1.    Definitions**

As used in the Stipulation the following terms have the meanings specified below:

1.1    "Authorized Claimant" or "Authorized Claimants" means any member of the Class whose claim for recovery has been allowed pursuant to the terms of the Stipulation.

1.2    "Claimant" means any Class Member who files a Proof of Claim in such form and manner, and within such time, as the Court shall prescribe.

1.3    "Claims Administrator" means the firm of Gilardi & Co. LLC.

1.4    "Class" means all Persons who purchased or otherwise acquired the stock of AVS during the period April 30, 1997 through and including April 14, 2000, including those Persons who purchased AVS stock in a secondary offering which became effective June 10, 1999 (the "Secondary Offering").  Excluded from the Class are Defendants, members of each of the immediate families of the Individual Defendants, any entity in which any Defendant has or had a controlling interest, current and former directors and officers of AVS and members of their immediate families, current and former partners of Arthur Andersen, and the legal representatives, heirs, successors, or assigns of any such excluded Person or entity.

1.5     "Class Member" means a Person who falls within the definition of the Class as set forth in ¶1.4 of the Stipulation and who has not submitted a valid request for exclusion.

1.6     "Class Period" means the period April 30, 1997 through and including April 14, 2000.

1.7     "Defendants" means AVS, Dale S. Baker, Garlan Braithwaite, Harold M. Woody, Joseph E. Civiletto, George F. Baker III, Jeffrey N. Greenblatt and Arthur Andersen.

1.8     "Effective Date" means the first date by which all of the events and conditions specified in ¶7.1 of the Stipulation have been met and have occurred.

1.9     "Escrow Agents" shall collectively mean the Arthur Andersen Escrow Agent and the AVS Escrow Agents as defined below:

(a)     "Arthur Andersen Escrow Agent" means the entity designated as the "Escrow Agent" pursuant to the "Escrow Agreement With Defendant Arthur Andersen" entered into by Arthur Andersen and  Plaintiffs' Co-Lead Counsel on or about April 18, 2002.

(b)     "AVS Escrow Agents" means the entities designated as the "Escrow Agent" pursuant to the "Escrow Agreement With Aviation Sales Defendants" entered into by counsel for AVS and Plaintiffs' Co-Lead Counsel as of May 6, 2002.

1.10    "Final" means the later of: (i) if there is an appeal, the date on which the Judgment, which has not been altered, amended or modified in any respect by any Court without express consent by all parties, is no longer subject to any further judicial review or appeal whatsoever, whether by reason of affirmance by a court of last resort, lapse of time, voluntary dismissal of appeal or otherwise; or (ii) if no appeal is filed, the expiration date of the time for the filing or noticing of any appeal from the Court's Judgment approving the Stipulation substantially in the form of Exhibit B hereto; i.e., thirty (30) days after entry of the Judgment.

For purposes of this paragraph, an "appeal" shall include any request for reargument or reconsideration or petition for a writ of certiorari or other writ that may be filed in connection with approval or disapproval of this settlement. Any proceeding or order, or any appeal or petition for a writ of certiorari pertaining solely to any plan of allocation and/or application for attorneys' fees, costs or expenses, shall not in any way delay or preclude the Judgment from becoming Final.

1.11 "Judgment" means the Final Judgment and Order of Dismissal with Prejudice ("Order and Final Judgment") to be rendered by the Court in the form attached hereto as Exhibit B.

1.12 "Lead Plaintiffs" means H. Robert Holmes, as Trustee for the Holmes Family Trust, H. Robert Holmes IRA, H. Robert Holmes, as General Partner of Gilford Partners, Debra Holmes, Debra Holmes, as Trustee for Kelly E. Holmes, and Debra Holmes, as Trustee for William B. Holmes.

1.13 "Person" means an individual, corporation, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, agents or assignees.

1.14 "Plaintiffs' Co-Lead Counsel" means Kaplan Fox & Kilsheimer LLP, Robert N. Kaplan, Christine M. Fox, 805 Third Avenue, 22nd Floor, New York, NY 10022, Telephone (212) 687-1980; Milberg Weiss Bershad Hynes & Lerach LLP, Kenneth J. Vianale, 5355 Town Center Road, Suite 900, Boca Raton, FL 33486, Telephone (561) 361-5000; Myron M. Cherry & Associates, Myron M. Cherry, Daniel Becka, 30 N. LaSalle Street, Chicago, IL 60602, Telephone (312) 372-2100.

1.15    "Plan of Allocation" means a plan or formula for allocating the Settlement Fund to Authorized Claimants after payment of expenses of notice and administration of the Settlement, Taxes and Tax Expenses, and such attorneys' fees, costs, expenses and interest as may be awarded by the Court.   Any Plan of Allocation is not part of the Stipulation and the Released Parties shall have no responsibility or liability with respect thereto.

1.16    "Released Parties" shall collectively mean the "AVS Released Parties" and the "Arthur Andersen Released Parties" as defined below:

(a)     "AVS Released Parties" means AVS and the Individual Defendants and each of AVS' and the Individual Defendants' past or present directors, officers, employees, partners, members, principals, agents, underwriters, insurers, co-insurers, reinsurers, controlling shareholders, attorneys, solicitors, banks or investment banks, associates, personal or legal representatives, predecessors, successors, parents, subsidiaries, divisions, joint ventures, assigns, spouses, heirs, related or affiliated entities, any entity in which AVS or any of the Individual Defendants has a controlling interest, any members of their immediate families, or any trust of which AVS or any of the Individual Defendants is the settlor or which is for the benefit of AVS or any of the Individual Defendants and/or member(s) of his or her family.

(b)     "Arthur Andersen Released Parties" means Arthur Andersen and each of Arthur Andersen's past or present directors, officers, employees, partners, members, principals, agents, underwriters, insurers, co-insurers, reinsurers, controlling shareholders, attorneys, solicitors, banks or investment banks, associates, personal or legal representatives, predecessors, successors, parents, subsidiaries, divisions, joint ventures, assigns, spouses, heirs, related or affiliated entities, any entity in which in which Arthur Andersen has a controlling interest, any

members of Arthur Andersen partners' immediate families, or any trust of which Arthur Andersen is the settlor or which is for the benefit of Arthur Andersen.

1.17  "Released Claims" shall mean any and all claims, demands, rights, causes of action or liabilities, of every nature and description whatsoever, whether based in law or equity, on federal, state, local, statutory or common law, or any other law, rule or regulation, including both known claims and Unknown Claims (as defined in ¶1.22 below), that have been or could have been asserted directly, indirectly, representatively or in any other capacity, in any forum by the Class Members, or any of them, or the successors or assigns of any of them, whether directly, indirectly, representatively or in any other capacity, against any of the Released Parties, which arise out of, or relate in any way to, the allegations, transactions, facts, events, matters, occurrences, acts, representations or omissions involved, set forth, referred to, or that could have been asserted in the Litigation, including, without limitation, claims for negligence, gross negligence, breach of duty of care, breach of duty of loyalty, breach of duty of candor, fraud, negligent misrepresentation, and breach of fiduciary duty, arising out of, based upon or related in any way to the purchase, acquisition, sale or disposition of AVS securities by any Class Member in the Secondary Offering or during the Class Period.

1.18  "Representative Plaintiffs" means each plaintiff named in the Litigation.

1.19  "Representative Plaintiffs' Counsel" means every counsel who has appeared for any Representative Plaintiff in the Litigation.

1.20  "Settlement Fund" means: (1) the principal amount of Eleven Million, Nine Hundred Thousand Dollars ($11,900,000) paid, in cash, pursuant to ¶¶2.1 and 2.2 of the Stipulation and delivered to the Escrow Agents, plus any accrued interest; and (2) the securities described in Exhibit C.

1.21    "Settling Parties" means, collectively, each of the Defendants and the Representative Plaintiffs on behalf of themselves and the Class Members.

1.22    "Unknown Claims" means any and all Released Claims which any Plaintiff or Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Parties, which, if known by him, her, or it might have affected his, her or its decision(s) with respect to the Stipulation.  With respect to any and all Released Claims, the Settling Parties stipulate and agree that upon the Effective Date, the Lead Plaintiffs and Defendants shall expressly, and each Class Member shall be deemed to have, and by operation of the Judgment shall have, expressly waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Lead Plaintiffs and Defendants acknowledge, and Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims was separately bargained for and was a material element of the Settlement.

## 2.    The Settlement

### a.    The Settlement Fund

2.1    Pursuant to the Escrow Agreement between Arthur Andersen and Plaintiffs' Co-Lead Counsel, defendant Arthur Andersen transmitted, on or about April 19, 2002, via wire transfer the sum of $400,000 in cash to an account designated by the Arthur Andersen Escrow Agent.

2.2     On or before May 8, 2002, defendants, other than Arthur Andersen, shall cause to be transmitted via wire transfer the sum of $11.5 million to an account designated by the AVS Escrow Agents.

2.3     After the Effective Date, AVS shall cause, at its expense, the securities described in Exhibit C to be distributed, in whole or in part, in accordance with Plaintiffs' Co-Lead Counsel's written instructions.

2.4     After the Effective Date, the AVS representative to the Escrow Agreement With Aviation Sales Defendants shall resign, as set forth therein.

2.5     It is contemplated that there will be at least two dates of distribution for both cash and securities: (i) the date of the distribution of attorneys' fees and costs awarded by the Court to plaintiffs' counsel; and (ii) the date of the distribution to Class Members.

**b.     The Escrow Agents**

2.6     The Escrow Agents shall invest the Settlement Fund deposited pursuant to ¶¶2.1 and 2.2 above in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then current market rates.

2.7     The Escrow Agents shall not disburse the Settlement Fund except as provided in the Stipulation, or by an order of the Court.

2.8     Subject to further order and/or directions as may be made by the Court, the Escrow Agents are authorized to execute such transactions on behalf of the Class as are consistent with the terms of the Stipulation.

2.9     All funds held by the Escrow Agents shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to the Stipulation and/or further order(s) of the Court.  All Settling Parties agree to hold the Escrow Agents harmless for any actions taken by them pursuant to the Stipulation and the Escrow Agreements.

2.10    After the Court grants preliminary approval of the Stipulation, Plaintiffs' Co-Lead Counsel shall establish a "Class Notice and Administration Fund," and the Escrow Agents shall deposit up to $100,000 from the Settlement Fund into such fund.  The Class Notice and Administration Fund may be used by Plaintiffs' Co-Lead Counsel to pay costs and expenses reasonably and actually incurred in connection with providing Notice to the Class, locating members of the Class, soliciting Class claims, assisting with the filing of claims, administering and distributing the Settlement Fund to Authorized Claimants, and processing Proof of Claim and Release forms, provided, however, that no such costs shall be paid prior to Court approval of the Notice Order in ¶3.1, below.  The Class Notice and Administration Fund shall also be invested and earn interest as provided for in ¶2.6 of this Stipulation.

**c.      Taxes**

2.11    (a)     For the purpose of this ¶2.11, references to the Settlement Fund shall include both the cash portion of the Settlement Fund and the Class Notice and Administration Fund and shall also include any earnings thereon.

(b)     The Settling Parties and the Escrow Agents agree that the cash portion of the Settlement Fund is intended to be at all times a "qualified settlement fund" within the meaning of Treas. Reg. Sec. 1.468B-1.  In addition, the Escrow Agents shall timely make such elections as necessary or advisable to carry out the provisions of this ¶2.11, including the

"relation-back election" (as defined in Treas. Reg. Sec. 1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agents to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(c)     For the purpose of §468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agents. The Escrow Agents shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treas. Reg. Sec. 1.468B-2(k)). Such returns (as well as the election described in ¶2.11(b)) shall be consistent with this ¶2.11 and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the cash portion of the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶2.11(d) hereof.

(d)     All (i) Taxes (including any estimated Taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon Defendants or Defendants' counsel with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes ("Taxes"), and (ii) expenses and costs incurred in connection with the operation and implementation of this ¶2.11 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this ¶2.11) ("Tax Expenses"), shall be paid out of the Settlement Fund; in all events Defendants and their counsel

shall have no liability or responsibility for the Taxes or the Tax Expenses.  The Settlement Fund shall indemnify and hold each of the Defendants and Defendants' counsel harmless for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification).  Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agents out of the Settlement Fund without prior order from the Court and the Escrow Agents shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. Sec. 1.468B-2(l)(2)); neither Defendants nor their counsel are responsible nor shall they have any liability therefor.  The parties hereto agree to cooperate with the Escrow Agents, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶2.11.

### d.      Termination of Settlement

2.12    In the event that the Stipulation is not approved, or is terminated, canceled, or fails to become effective for any reason, the Settlement Fund (including accrued interest net of Taxes and Tax Expenses) less expenses actually incurred or due and owing in connection with notice costs and administration of the Settlement provided for herein, shall be refunded to Defendants as described in ¶7.5 below.  Notwithstanding anything herein to the contrary, in the event that the preliminary approval order is not entered, the entire Settlement Fund and interest (net of Taxes and Tax Expenses), including the Class Notice and Administration Fund, shall be refunded by the Escrow Agents pursuant to written instructions from counsel for AVS, as to the principal amount of Eleven Million, Five Hundred Thousand Dollars ($11,500,000) plus interest,

or Arthur Andersen, as to the principal amount of Four Hundred Thousand Dollars ($400,000) plus interest.

### 3.     Notice Order and Settlement Hearing

3.1     Within five (5) business days after execution of the Stipulation, Plaintiffs' Co-Lead Counsel shall submit the Stipulation together with its Exhibits to the Court and shall apply for entry of an order (the "Notice Order"), substantially in the form of Exhibit A hereto, requesting, inter alia, the certification of the Class for the purpose of settlement, preliminary approval of the Settlement set forth in the Stipulation, including approval for the mailing and publication of a settlement notice (the "Notice"), substantially in the form of Exhibits A-1 and A-3 hereto, which shall include the general terms of the Settlement set forth in the Stipulation, the proposed Plan of Allocation, the general terms of the Fee and Expense Application as defined in ¶6.1 below and the date of the Settlement Hearing as defined below.

3.2     Plaintiffs' Co-Lead Counsel shall request that, after Notice is given, the Court hold a hearing (the "Settlement Hearing") and approve the Settlement of the Litigation as set forth herein.  At or after the Settlement Hearing, Plaintiffs' Co-Lead Counsel also will request that the Court approve the proposed Plan of Allocation and the Fee and Expense Application.

### 4.     Releases

4.1     Upon the Effective Date, as defined in ¶1.8, Lead Plaintiffs and each of the Class Members on behalf of themselves, their heirs, executors, administrators, successors, assigns, officers, and directors, and any persons they represent, all in their capacities as such, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged all Released Claims against the Released Parties, whether or not such Class Member executes and delivers the Proof of Claim and Release, or otherwise shares in the Settlement Fund.

4.2     The Proof of Claim and Release to be executed by Class Members shall be substantially in the form contained in Exhibit A-2 hereto.

4.3     Upon the Effective Date, as defined in ¶1.8, each of the Released Parties shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged each and all of the Class Members and Plaintiffs' Co-Lead Counsel from all claims (including "Unknown Claims"), arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement or resolution of the Litigation or the Released Claims.

4.4     (a)     Each Lead Plaintiff and Class Member shall be deemed to have covenanted to refrain from instituting, commencing or prosecuting, either directly, indirectly, representatively or in any other capacity, any and all claims, demands, rights, causes of action or liabilities, of every nature and description whatsoever, whether based in law or equity, on federal, state, local, statutory or common law, or any other law, rule or regulation, including both known claims and Unknown Claims, that have been or could have been asserted directly, indirectly, representatively or in any other capacity, in any forum by the Class Members, or any of them, or the successors or assigns of any of them, against any of the Released Parties, which arise out of, or relate in any way to, or could have been asserted based upon, the allegations, transactions, facts, events, matters, occurrences, acts, representations or omissions involved, set forth, referred to, or which relate directly or indirectly to the Litigation, including, without limitation, claims for negligence, gross negligence, breach of duty of care, breach of duty of loyalty, breach of duty of candor, fraud, negligent misrepresentation, and breach of fiduciary duty.

4.4     (b)     The Order and Final Judgment, set forth in Exhibit B hereto, shall include a Final bar order finally discharging the Released Parties (i) from the Released Claims by the Plaintiffs and the Class; and (ii) from all claims for contribution or equitable indemnification by any person or entity, directly, indirectly, representatively or in any other capacity, whether arising under state, federal or common law, based upon, arising out of, relating to, or in connection with the Released Claims of Plaintiffs, the Class or any Class Member.

**5.     Administration and Calculation of Claims, Final Awards and Supervision and Distribution of Settlement Fund**

5.1     Plaintiffs' Co-Lead Counsel, or their authorized agents, acting on behalf of the Class, and subject to such supervision and direction of the Court as may be necessary or as circumstances may require, shall administer and calculate the claims submitted by Class Members and shall oversee distribution of the Net Settlement Fund (defined below) to Authorized Claimants.

5.2     The Settlement Fund shall be applied as follows:

(a)     To pay all the costs and expenses reasonably and actually incurred in connection with providing Notice, locating members of the Class, soliciting Class claims, assisting with the filing of claims, administering and distributing the Settlement Fund to Authorized Claimants, and processing Proof of Claim and Release forms;

(b)     To pay the Taxes and Tax Expenses described in ¶2.11 above;

(c)     To pay plaintiffs' counsel's attorneys' fees, expenses and costs with interest thereon (the "Fee and Expense Award"), if and to the extent allowed by the Court; and

(d)     To distribute the balance of the Settlement Fund (the "Net Settlement Fund") to Authorized Claimants as allowed by the Stipulation, the Plan of Allocation, or the Court.

5.3     Upon the Effective Date and thereafter, and in accordance with the terms of the Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with the following:

5.4     Within ninety (90) days after the mailing of the Notice or such other time as may be set by the Court, each Person claiming to be an Authorized Claimant shall be required to submit to the Claims Administrator a completed Proof of Claim and Release, substantially in the form of Exhibit A-2 hereto, signed under penalty of perjury and supported by such documents as specified in the Proof of Claim and Release and as are reasonably available to the Authorized Claimant.

5.5     Except as otherwise ordered by the Court, all Class Members who fail to timely submit a Proof of Claim and Release within such period, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments pursuant to the Stipulation and the Settlement set forth herein, but will in all other respects be subject to and bound by the provisions of the Stipulation, the releases contained herein, and the Judgment.

5.6     The Net Settlement Fund shall be distributed to the Authorized Claimants substantially in accordance with a Plan of Allocation to be described in the Notice and approved by the Court.

5.7     The Released Parties shall not have any responsibility for, interest in, or liability whatsoever with respect to the providing of notice, the investment or distribution of the Net Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of claims, the payment or withholding of Taxes, or any losses incurred in connection therewith.

5.8    No Person shall have any claim against Plaintiffs' Co-Lead Counsel or any claims administrator, or other agent designated by Plaintiffs' Co-Lead Counsel, based on the distributions made in accordance with the Stipulation and the Settlement contained therein, the Plan of Allocation, or further orders of the Court.

5.9    It is understood and agreed by the Settling Parties that any proposed Plan of Allocation of the Net Settlement Fund including, but not limited to, any adjustments to an Authorized Claimant's claim set forth therein, is not a part of the Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement set forth in the Stipulation, and any order or proceedings relating to the Plan of Allocation shall not operate to terminate or cancel the Stipulation or affect the finality of the Court's Judgment approving the Stipulation and the Settlement set forth therein, or any other orders entered pursuant to the Stipulation.

## 6.    Representative Plaintiffs' Counsel's Attorneys' Fees and Reimbursement of Expenses

6.1    Plaintiffs' Co-Lead Counsel may submit an application or applications (the "Fee and Expense Application") for distributions to plaintiffs' counsel from the Settlement Fund for: (a) an award of attorneys' fees; plus (b) reimbursement of expenses, including the fees and expenses of any Lead Plaintiffs, experts or consultants, incurred in connection with prosecuting the Litigation, plus any interest on such attorneys' fees, costs and expenses at the same rate and for the same periods as earned by the Settlement Fund (until paid) as may be awarded by the Court.  There shall be no distribution from the Settlement Fund for the purposes provided in this ¶6.1 until after the Effective Date.  Plaintiffs' Co-Lead Counsel reserve the right to make additional applications for fees and expenses incurred.

6.2     The attorneys' fees and expenses, including the fees and expenses of experts and consultants, as awarded by the Court, shall be paid to Plaintiffs' Co-Lead Counsel from the Settlement Fund, immediately after the Court executes an order awarding such fees and expenses, provided, however, that no such payments shall be made prior to the Effective Date. Plaintiffs' Co-Lead Counsel shall thereafter allocate the attorneys' fees amongst Representative Plaintiffs' Counsel in a manner in which Plaintiffs' Co-Lead Counsel in good faith believe reflects the contributions of such counsel to the prosecution and settlement of the Litigation.

6.3     The procedure for and the allowance or disallowance by the Court of any application by Plaintiffs' Co-Lead Counsel for attorneys' fees and expenses, including the fees and expenses of experts and consultants, to be paid out of the Settlement Fund, are not part of the Settlement set forth in the Stipulation, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement set forth in the Stipulation, and any order or proceedings relating to the Fee and Expense Application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel the Stipulation, or affect or delay the finality of the Judgment approving the Stipulation and the Settlement of the Litigation set forth therein.

6.4     The Released Parties shall have no responsibility for, and no liability whatsoever with respect to, any payment to Plaintiffs' Co-Lead Counsel, any Representative Plaintiffs' Counsel, or any other counsel or Person who receives payment from the Settlement Fund.

6.5     The Released Parties shall have no responsibility for, and no liability whatsoever with respect to, the allocation among Representative Plaintiffs' Counsel and/or any other Person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Litigation.

7.      **Conditions of Settlement, Effect of Disapproval, Cancellation or Termination**

7.1     The Effective Date of the Stipulation shall be conditioned on the occurrence of all of the following events:

(a)      AVS and Arthur Andersen have timely made their contributions to the Settlement Fund as required by ¶2.1 and ¶2.2, respectively, above;

(b)      The Court has entered the Notice Order as required by ¶3.1;

(c)      The Court has certified the settlement class;

(d)      There shall not have been notice of intent to withdraw from this Settlement pursuant to ¶7.4.  It is the intent of the Settling Parties that any notice of intent to withdraw by Arthur Andersen shall be effective only as to Arthur Andersen, and that any notice of intent to withdraw by AVS and the Individual Defendants shall be effective only as to AVS and the Individual Defendants;

(e)      The Court has entered the Judgment in the form of Exhibit B hereto; and

(f)      The Judgment has become Final, as defined in ¶1.10, above.

7.2     Upon the occurrence of all of the events referenced in ¶7.1 above, any and all remaining interest or right of Defendants in or to the Settlement Fund, if any, shall be absolutely and forever extinguished.

7.3     If all of the conditions specified in ¶7.1 are not met, then the Stipulation shall be canceled and terminated subject to ¶7.6 unless Plaintiffs' Co-Lead Counsel and counsel for Defendants mutually agree in writing to proceed with the Stipulation.

7.4     If prior to the Settlement Hearing, Persons who otherwise would be members of the Class have timely requested exclusion ("Requests for Exclusion") from the Class in accordance with the provisions of the Notice Order and the notice given pursuant thereto, and such Persons in the aggregate purchased a number of shares of AVS common stock during the

Class Period in an amount greater than the sum specified in a separate supplemental agreement (the "Supplemental Agreement") between the Settling Parties, AVS shall have the option to terminate the Stipulation, as to the performance of AVS and the Individual Defendants alone, and Arthur Andersen shall have the option to terminate the Stipulation, as to its performance alone, in accordance with the procedures set forth in the Supplemental Agreement.   The Supplemental Agreement will not be filed with the Court unless and until a dispute among the Settling Parties concerning its interpretation or application arises.   Copies of all Requests for Exclusion received, together with copies of all written revocations of Requests for Exclusion, shall be delivered to Defendants' counsel within three (3) days of receipt by Plaintiffs' Co-Lead Counsel but in no event later than ten (10) business days before the Settlement Hearing.

7.5    Unless otherwise ordered by the Court, in the event the Stipulation shall terminate, or be canceled, or shall not become effective for any reason, within five (5) business days after written notification of such event is sent by counsel for AVS or Arthur Andersen or Plaintiffs' Co-Lead Counsel to the Escrow Agents, the Settlement Fund (including accrued interest), plus any amount then remaining in the Class Notice and Administration Fund (including accrued interest), less expenses and any costs which have either been disbursed, or are chargeable to the Class Notice and Administration Fund, shall be refunded by the Escrow Agents pursuant to written instructions from counsel for AVS or Arthur Andersen, as applicable.   At the request of counsel for AVS or Arthur Andersen, the Escrow Agents or their designee shall apply for any tax refund owed to the Settlement Fund and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for refund.

7.6    In the event that the Stipulation is not approved by the Court or the Settlement set forth in the Stipulation is terminated or fails to become effective in accordance with its terms, the

Settling Parties shall be restored to their respective positions in the Litigation as of the date of this Stipulation. In such event, the terms and provisions of the Stipulation, shall have no further force and effect with respect to the Settling Parties and shall not be used in the Litigation or in any other proceeding for any purpose, and any Judgment or order entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*. No order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or the amount of any attorneys' fees, expenses and interest awarded by the Court to the Representative Plaintiffs or any of their counsel shall constitute grounds for cancellation or termination of the Stipulation.

7.7    If the Effective Date does not occur, or if the Stipulation is terminated pursuant to its terms, neither the Representative Plaintiffs nor any of their counsel shall have any obligation to repay any amounts actually and properly disbursed from the Class Notice and Administration Fund. However, no funds shall be disbursed for the Class Notice and Administration Fund or any other purpose prior to the Court's approval of the Notice Order in ¶3.1. In addition, any expenses already incurred and chargeable to the Class Notice and Administration Fund pursuant to ¶2.10 hereof at the time of such termination or cancellation but which have not been paid, shall be paid by the Escrow Agents in accordance with the terms of the Stipulation prior to the balance being refunded in accordance with ¶7.5 above.

7.8    (a)    If a case is commenced in respect of any Defendant (other than Arthur Andersen) under Title 11 of the United States Code (Bankruptcy), or a trustee, receiver or conservator is appointed, and in the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money to the Settlement Fund or any portion thereof by or on behalf of such Defendant to be a preference, voidable transfer, fraudulent transfer or

similar transaction and any portion thereof is required to be returned, and such amount is not promptly deposited to the Settlement Fund by other Defendants, then, at the election of Plaintiffs' Co-Lead Counsel, upon compliance with ¶7.8(b), including the return of the cash and securities provided by AVS to the Settlement Fund, the parties shall jointly move the Court to vacate and set aside the releases given and Judgment entered in favor of the AVS Released Parties (other than Arthur Andersen) pursuant to this Stipulation, which releases and Judgment shall be null and void, and Plaintiffs, AVS and the Individual Defendants shall be restored to their respective positions in the litigation as of the date a day prior to the date of this Stipulation, and provided further that the Releases provided pursuant to ¶4.3 by the AVS Released Parties shall also be null and void.  The provisions herein shall apply only to the AVS Released Parties, and the Stipulation would remain in full force and effect as to Arthur Andersen and the Arthur Andersen Released Parties.

7.8     (b)     In the event that the Judgment as to AVS and the Individual Defendants is vacated as provided in ¶7.8(a), prior to the distribution of any portion of the $11.5 million or any of the securities provided by AVS to the members of the Class, it is the intention of all parties hereto that all of the $11.5 million (including accrued interest net of Taxes and Tax Expenses, if any), and any of the securities provided by AVS, shall be returned to AVS, subject to and pursuant to¶7.5, and Plaintiffs' Co-Lead Counsel and the AVS Escrow Agent(s) shall do so unless otherwise ordered by a court of competent jurisdiction.  If any portion of the $11.5 million or any portion of the securities provided by AVS shall have already been distributed to the members of the Class, then the provisions of this ¶7.8 shall not apply.

7.9     (a)     If a case is commenced in respect of Arthur Andersen under Title 11 of the United States Code (Bankruptcy), or a trustee, receiver or conservator is appointed for Arthur

Andersen, and in the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money to the Settlement Fund or any portion thereof by Arthur Andersen to be a preference, voidable transfer, fraudulent transfer or similar transaction and any portion thereof is required to be returned, and such amount is not promptly deposited to the Settlement Fund by other Defendants, then, at the election of Plaintiffs' Co-Lead Counsel, upon compliance with ¶7.9(b), including the return of the cash provided by Arthur Andersen in the Settlement Fund, the parties shall jointly move the Court to vacate and set aside the releases given and Judgment entered in favor of the Arthur Andersen Released Parties pursuant to this Stipulation, which releases and Judgment shall be null and void, and Plaintiffs and Arthur Andersen shall be restored to their respective positions in the litigation as of the date a day prior to the date of this Stipulation, and provided further that the Releases provided pursuant to ¶4.3 by the Arthur Andersen Released Parties shall also be null and void.  The provisions herein shall apply only to the Arthur Andersen Released Parties, and the Stipulation would remain in full force and effect as to all other Defendants and the AVS Released Parties.

7.9   (b)   In the event that the Judgment as to Arthur Andersen is vacated as provided in ¶7.9(a) prior to the distribution to the members of the Class of any portion of the $400,000 (including accrued interest and net of Taxes and Tax Expenses, if any) provided by Arthur Andersen to the Arthur Andersen Escrow Agent, all such cash shall be returned to Arthur Andersen subject to and pursuant to ¶7.5.  If any portion of the $400,000 shall have already been distributed to the members of the Class, then the provisions of this ¶7.9 shall not apply.

7.10   If Plaintiffs' Counsel shall have received any of the cash or securities constituting a portion of the Settlement Fund at or prior to such time as such cash and/or securities are required to be returned under ¶¶ 7.8 and 7.9 above (as the case may be), then each of Plaintiffs'

Counsel shall, within five days after receiving notice from Defendant's counsel or from the Court to this effect, refund to the Escrow Agents the cash fees and expenses, and refund to AVS the securities, previously paid or distributed to them from the Settlement Fund, plus interest thereon on the cash returned at the same rate as would have been earned on the Settlement Fund had it remained in escrow between the Effective Date and such date. Each such Plaintiffs' Counsel's law firm, as a condition to receiving such fees and expenses, on behalf of itself and each partner and/or shareholder of it, agrees that the law firm and its partners and/or shareholders are subject to the jurisdiction of the Court for the purpose of enforcing the provisions of this paragraph.

**8.      Miscellaneous Provisions**

8.1      The Settling Parties (a) acknowledge that it is their intent to consummate this agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of the Stipulation.

8.2      Each Defendant warrants as to himself or itself that, at the time any of the payments provided for herein are made on behalf of himself or itself, he or it is not insolvent and such payment will not render him or it insolvent. This representation is made by each Defendant as to himself or itself and is not made by counsel for Defendants.

8.3      The parties intend this Stipulation to be a final and complete resolution of all disputes between them with respect to the Litigation. The Settlement compromises claims which are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense. Other than the statement that "the Litigation is being settled voluntarily after consultation with competent legal counsel," the Settling Parties will not make any statement to any media representative (whether or not for attribution), regarding the Litigation, information

received from other parties during this Litigation, or this Stipulation, provided, however, that AVS may report the terms of the Settlement in its filings with the United States Securities and Exchange Commission. The Final Judgment will contain a statement that during the course of the Litigation, the parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11. The Final Judgment shall also contain all necessary approvals for issuance of the securities described in Exhibit C pursuant to Section 3(a)(10) of the Securities Act of 1993, and SEC regulations thereunder. The Settling Parties agree that the amount paid to the Settlement Fund and the other terms of the Settlement were negotiated in good faith by the Settling Parties, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.

8.4     Neither the Stipulation nor the Settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or liability of Defendants; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of Defendants in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal. Defendants may file the Stipulation and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

8.5     The Settling Parties and their counsel and agents agree that all information or documents provided by another party during the litigation or mediation shall be treated as

confidential information and shall not (a) be disclosed to any other person, and (b) be used for any other purpose. The Settling Parties further agree that the agreement to preserve the confidentiality of information provided by another party shall continue following entry of the Order and Final Judgment, and that this Court will retain jurisdiction to adjudicate disputes over the treatment of confidential information. Within forty-five (45) days after the Order and Final Judgment becomes final (within the meaning of ¶1.10), all documents produced in this matter shall be returned to the producing party or destroyed, and counsel of record for the receiving party shall certify in writing that all documents produced have been returned to the producing party or destroyed, and shall serve such certification on the producing party.

8.6    All of the Exhibits to the Stipulation are material and integral parts thereof and are fully incorporated therein by this reference.

8.7    The Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

8.8    The Stipulation and the Exhibits attached thereto and the Supplemental Agreement constitute the entire agreement among the parties hereto and no representations, warranties or inducements have been made to any party concerning the Stipulation or its Exhibits other than the representations, warranties and covenants contained and memorialized in such documents. Except as otherwise provided therein, each party shall bear its own costs.

8.9    Plaintiffs' Co-Lead Counsel, on behalf of the Class, are expressly authorized by the Lead Plaintiffs to take all appropriate action required or permitted to be taken by the Class pursuant to the Stipulation to effectuate its terms and also are expressly authorized to enter into any modifications or amendments to the Stipulation on behalf of the Class which they deem appropriate.

8.10    Each counsel or other Person executing the Stipulation or any of its Exhibits on behalf of any party hereto hereby warrants that such Person has the full authority to do so.

8.11    The Stipulation may be executed in one or more counterparts, including by facsimile.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  A complete set of original executed counterparts shall be filed with the Court.

8.12    The Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

8.13    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Stipulation, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Stipulation.

8.14    The Stipulation and the Exhibits thereto shall be governed by Federal Law, including Rule 23 of the Federal Rules of Civil Procedure.

8.15    To the extent not covered by Federal Law, the Stipulation and the Exhibits thereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of Florida, and the rights and obligations of the parties to the Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Florida without giving effect to that State's choice of law principles.

**[Signatures on next pages]**

IN WITNESS WHEREOF, the parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys, dated as of May 6, 2002.

MILBERG WEISS BERSHAD HYNES
& LERACH LLP

By: _____
Kenneth J. Vianale (Fla. Bar No. 169668)

5355 Town Center Road, Suite 900
Boca Raton, FL 33486
Tel:    (561) 361-5000
Fax:    (561) 367-8400

KAPLAN FOX & KILSHEIMER LLP

By: _____
    Robert N. Kaplan (admitted *pro hac vice*)
    Christine M. Fox (admitted *pro hac vice*)

805 Third Avenue, 22nd Floor
New York, NY 10022
Tel:    (212) 687-1980
Fax:    (212) 687-7714

MYRON M. CHERRY & ASSOCIATES

By: _____
    Myron M. Cherry (admitted *pro hac vice*)
    Daniel Becka (Fla. Bar No. 0137601)

30 N. LaSalle Street
Chicago, IL 60602
Tel:    (312) 372-2100
Fax:    (312) 853-0279

**Plaintiffs' Co-Lead Counsel**

IN WITNESS WHEREOF, the parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys, dated as of May 6, 2002.

MILBERG WEISS BERSHAD HYNES
& LERACH LLP

By: _____
      Kenneth J. Vianale (Fla. Bar No. 169668)

5355 Town Center Road, Suite 900
Boca Raton, FL 33486
Tel:    (561) 361-5000
Fax:   (561) 367-8400

KAPLAN FOX & KILSHEIMER LLP

By: _____
      Robert N. Kaplan (admitted *pro hac vice*)
      Christine M. Fox (admitted *pro hac vice*)

805 Third Avenue, 22nd Floor
New York, NY 10022
Tel:    (212) 687-1980
Fax:   (212) 687-7714

MYRON M. CHERRY & ASSOCIATES

By: _____
      Myron M. Cherry (admitted *pro hac vice*)
      Daniel Becka (Fla. Bar No. 0137601)

30 N. LaSalle Street
Chicago, IL 60602
Tel:    (312) 372-2100
Fax:   (312) 853-0279

**Plaintiffs' Co-Lead Counsel**

AKERMAN, SENTERFITT & EIDSON, P.A.

By: _____
      Stanley H. Wakshlag (Fla Bar No. 266264)

One S.E. 3rd Avenue, 28th Floor
Miami, FL 33131
Tel:    (305) 374-5600
Fax:   (305) 374-5095

**Counsel for Defendant Aviation Sales Company,
n/k/a TIMCO Aviation Services, Inc.**

ARNOLD & PORTER

By:_____
      Scott B. Schreiber (admitted *pro hac vice*)
      John A. Freedman (admitted *pro hac vice*)

Thurman Arnold Building
555 Twelfth Street, N.W.
Washington, D.C. 20004-1202
Tel:    (202) 942-5000
Fax:   (202) 942-5999

HARKE & CLASBY
Lance A. Harke, Esq.
155 South Miami Avenue, Suite 600
Miami, Florida 33130
Tel:    (305) 536-8220
Fax:   (305) 536-8229

**Counsel for Defendant Arthur Andersen LLP**

AKERMAN, SENTERFITT & EIDSON, P.A.


By:_____
          Stanley H. Wakshlag (Fla Bar No. 266264)

One S.E. 3rd Avenue, 28th Floor
Miami, FL 33131
Tel:    (305) 374-5600
Fax:    (305) 374-5095

**Counsel for Defendant Aviation Sales Company,
n/k/a TIMCO Aviation Services, Inc.**

ARNOLD & PORTER

By:_____
          Scott B. Schreiber (admitted *pro hac vice*)
          John A. Freedman (admitted *pro hac vice*)

Thurman Arnold Building
555 Twelfth Street, N.W.
Washington, D.C. 20004-1202
Tel:    (202) 942-5000
Fax:    (202) 942-5999

HARKE & CLASBY
Lance A. Harke, Esq.
155 South Miami Avenue, Suite 600
Miami, Florida 33130
Tel:    (305) 536-8220
Fax:    (305) 536-8229

**Counsel for Defendant Arthur Andersen LLP**

STEEL HECTOR & DAVIS LLP

By:_____
        Lewis F. Murphy, *P.A.*
        Wendy S. Leavitt

200 South Biscayne Boulevard
Miami, FL 33131-2398
Tel:    (305) 577-7000
Fax:    (305) 577-7001

**Counsel for Defendant Garlan Braithwaite**

HOMER, BONNER & DELGADO, P.A.

By:_____
        R. Lawrence Bonner
        Justin C. Fineberg

3400 Bank of America Tower at International Place
100 Southeast 2nd Street
Miami, FL 33131
Tel:    (305) 350-5100
Fax:    (305) 372-2738

**Counsel for Defendant Joseph E. Civiletto**

ARAGON,       BURLINGTON,       WEIL       &
CROCKETT, S.A.

By:_____
        Jeffrey Crockett
        Sean Santini

2699 South Bayshore Drive, Penthouse
Miami, Florida 33133
Tel:    (305) 858-2900
Fax:    (305) 858-5261

**Counsel for Defendants Dale S. Baker and
Harold M. Woody**

STEEL HECTOR & DAVIS LLP


By:_____
    Lewis F. Murphy
    Wendy S. Leavitt

200 South Biscayne Boulevard
Miami, FL 33131-2398
Tel:   (305) 577-7000
Fax:  (305) 577-7001

**Counsel for Defendant Garlan Braithwaite**

HOMER, BONNER & DELGADO, P.A.


By:_____
    R. Lawrence Bonner
    ~~Justin C. Fineberg~~

3400 Bank of America Tower at International Place
100 Southeast 2nd Street
Miami, FL 33131
Tel:   (305) 350-5100
Fax:  (305) 372-2738

**Counsel for Defendant Joseph E. Civiletto**

ARAGON,      BURLINGTON,     WEIL    &
CROCKETT, S.A.


By:_____
    Jeffrey Crockett
    Sean Santini

2699 South Bayshore Drive, Penthouse
Miami, Florida 33133
Tel:   (305) 858-2900
Fax:  (305) 858-5261

**Counsel for Defendants Dale S. Baker and
Harold M. Woody**

STEEL HECTOR & DAVIS LLP


By:_____
       Lewis F. Murphy
       Wendy S. Leavitt

200 South Biscayne Boulevard
Miami, FL 33131-2398
Tel:    (305) 577-7000
Fax:   (305) 577-7001

**Counsel for Defendant Garlan Braithwaite**

HOMER, BONNER & DELGADO, P.A.


By:_____
       R. Lawrence Bonner
       Justin C. Fineberg

3400 Bank of America Tower at International Place
100 Southeast 2nd Street
Miami, FL 33131
Tel:    (305) 350-5100
Fax:   (305) 372-2738

**Counsel for Defendant Joseph E. Civiletto**

ARAGON,      BURLINGTON,      WEIL      &
CROCKETT, S.A.

By:_____
       Jeffrey Crockett
       Sean Santini

2699 South Bayshore Drive, Penthouse
Miami, Florida 33133
Tel:    (305) 858-2900
Fax:   (305) 858-5261

**Counsel for Defendants Dale S. Baker and
Harold M. Woody**

GREENBERG TRAURIG P.A.

By: _____
Per Hilarie Bass          David A. Coulson
                          Fk. Bar # 0176222

1221 Brickell Avenue
Miami, Florida 33131
Tel:   (305) 579-0500
Fax:   (305) 579-0717

BAKER BOTTS L.L.P.

By: _____
        James E. Maloney, Esq.

One Shell Plaza
910 Louisiana Street
Houston, Texas 77002-4995
Tel:   713-229-1255
Fax:   713-229-7755

**Counsel for Defendants Jeffrey N. Greenblatt
and George F. Baker, III**

GREENBERG TRAURIG P.A.


By:_____
       Hilarie Bass

1221 Brickell Avenue
Miami, Florida 33131
Tel:   (305) 579-0500
Fax:   (305) 579-0717

BAKER BOTTS L.L.P.


By:_____
       James E. Maloney, Esq.

One Shell Plaza
910 Louisiana Street
Houston, Texas 77002-4995
Tel:   713-229-1255
Fax:   713-229-7755

**Counsel for Defendants Jeffrey N. Greenblatt and George F. Baker, III**

# EXHIBIT "A"

{MI635060;1}

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No. 99-2560-CIV-MORENO/DUBE

H. ROBERT HOLMES, As Trustee for the
Holmes Family Trust, On Behalf of Himself and
All Others Similarly Situated,

Plaintiff,

v.

DALE S. BAKER, GARLAN BRAITHWAITE,
HAROLD M. WOODY, JOSEPH E.
CIVILETTO, GEORGE F. BAKER III,
JEFFREY N. GREENBLATT, AVIATION
SALES COMPANY and ARTHUR ANDERSEN
LLP,

Defendants.

**ORDER PRELIMINARILY APPROVING
SETTLEMENT, CERTIFYING THE CLASS AND
PROVIDING FOR NOTICE**

**EXHIBIT A**

WHEREAS, a class action is pending before the Court entitled *Holmes v. Dale S. Baker, et al.*, No. 99-2560-CIV-MORENO (the "Litigation");

WHEREAS, the parties having made application, pursuant to Federal Rule of Civil Procedure 23(e), for an order preliminarily approving the settlement of the Litigation, in accordance with a Stipulation of Settlement dated as of May 6, 2002 (the "Stipulation"), which, together with the Exhibits annexed thereto sets forth the terms and conditions for a proposed settlement of the Litigation and for dismissal of the Litigation with prejudice upon the terms and conditions set forth therein; and the Court having read and considered the Stipulation and the Exhibits annexed thereto; and

WHEREAS, all defined terms contained herein shall have the same meanings as set forth in the Stipulation.

NOW, THEREFORE, IT IS HEREBY ORDERED:

1.       Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court hereby certifies a Class defined as all Persons who purchased or otherwise acquired the stock of Aviation Sales Company n/k/a Timco Aviation Services Inc. ("AVS" or the "Company") during the period April 30, 1997 through and including April 14, 2000, including those Persons who purchased AVS stock in a secondary offering which became effective June 10, 1999. Excluded from the Class are Defendants, members of each of the immediate families of the Individual Defendants, any entity in which any Defendant has or had a controlling interest, current and former directors and officers of AVS and members of their immediate families, current and former partners of Arthur Andersen LLP and the legal representatives, heirs, successors, or assigns of any such excluded Person or entity.

2.     With respect to this certified Class, this Court finds and concludes that: (a) the members of the Class are so numerous that joinder of all Class members in the class action is impracticable; (b) there are questions of law and fact common to the Class which predominate over any individual question; (c) the claims of the Lead Plaintiffs are typical of the claims of the Class; (d) the Lead Plaintiffs and their counsel have fairly and adequately represented and protected the interests of the Class members; and (e) a class action is superior to other available methods for the fair and efficient adjudication of the controversy, considering: (i) the interest of the members of the Class in individually controlling the prosecution of the separate actions, (ii) the extent and nature of any litigation concerning the controversy already commenced by members of the Class, (iii) the desirability or undesirability of continuing the Litigation of these claims, and (iv) the difficulties likely to be encountered in the management of the class action.

3.     The Court hereby preliminarily approves the Stipulation and the Settlement set forth therein, subject to further consideration at the Settlement Hearing described below.

4.     A hearing (the "Settlement Hearing") shall be held before this Court on _____, 2002, at ___:___ __.m., at the United States District Court, Southern District of Florida, Miami Division, 301 North Miami Avenue, Miami, FL 33128, to determine whether the proposed Settlement of the Litigation on the terms and conditions provided for in the Stipulation is fair, reasonable and adequate to each of the Settling Parties and the Class and should be approved by the Court; whether a Judgment as provided for in the Stipulation should be entered herein; whether the proposed Plan of Allocation should be approved; and to determine the amount of fees and expenses that should be awarded to Plaintiffs' Counsel. The Court may adjourn the Settlement Hearing without further notice to members of the Class.

5.      The Court approves, as to form and content, the Notice of Proposed Settlement of Class Action (the "Notice"), the Proof of Claim and Release form (the "Proof of Claim"), and Summary Notice for Publication ("Summary Notice") annexed as Exhibits 1, 2, and 3 hereto, and finds that the mailing and distribution of the Notice and publishing of the Summary Notice substantially in the manner and form set forth in ¶7 of this Order meets the requirements of Federal Rule of Civil Procedure 23 and due process, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all Persons entitled thereto.

6.      The Court recognizes and acknowledges that one consequence of a determination of fairness at the Settlement Hearing is that, pursuant to Section 3(a)(10) of the Securities Act of 1933, 15 U.S.C. §77c(a)(10),  the Company securities to be issued as part of the Settlement will be distributed to Plaintiffs' Counsel and to Class Members without registration and compliance with the prospectus delivery requirements of the securities laws.

7.      Plaintiffs' Co-Lead Counsel are hereby authorized to retain the firm of Gilardi & Co. LLC (the "Claims Administrator") to supervise and administer the notice procedure as well as the processing of claims as more fully set forth below:

(a)      Not later than fourteen (14) business days from the date hereof (the "Notice Date"), Plaintiffs' Co-Lead Counsel shall cause a copy of the Notice and Proof of Claim, substantially in the form annexed as Exhibits 1 and 2, to be mailed by first class mail to all members of the Class who can be identified with reasonable effort;

(b)      Within ten (10) days of the Notice Date, Plaintiffs' Co-Lead Counsel shall cause the Summary Notice, substantially in the form of Exhibit 3 hereto, to be published once in the national edition of *The Wall Street Journal*; and

-3-

(c)     At or prior to the Settlement Hearing, Plaintiffs' Co-Lead Counsel shall serve on Defendants' counsel and file with the Court proof, by affidavit or declaration, of such mailing and publishing.

8.      Nominees who held stock of AVS purchased or otherwise acquired during the period April 30, 1997 through and including April 14, 2000, including AVS stock purchased in a secondary offering which became effective June 10, 1999, shall send the Notice and the Proof of Claim to the beneficial owners of such AVS stock within ten (10) days after receipt thereof, or send a list of the names and addresses of such beneficial owners to the Claims Administrator within ten (10) days of receipt thereof in which event the Claims Administrator shall promptly mail the Notice and Proof of Claim to such beneficial owners.

9.      All members of the Class who do not submit a valid request for exclusion in accordance with ¶13 below shall be bound by all determinations and judgments in the Litigation concerning the Settlement, whether favorable or unfavorable to the Class.

10.     Members of the Class who wish to participate in the Settlement shall complete and submit Proof of Claim forms in accordance with the instructions contained therein.  Unless the Court orders otherwise, all Proof of Claim forms must be submitted no later than ninety (90) days from the Notice Date.  Any Class Member who does not timely submit a Proof of Claim within the time provided for shall be barred from sharing in the distribution of the proceeds of the Settlement Fund, unless otherwise ordered by the Court.

11.     Class Members may enter an appearance in the Litigation, at their own expense, individually or through counsel of their own choice.  If they do not enter an appearance, they will be represented by Plaintiffs' Co-Lead Counsel.

-4-

12.     Pending final determination of whether the Settlement should be approved, neither the Lead Plaintiffs nor any Class Member, either directly, representatively, or in any other capacity, shall commence or prosecute against any of the Released Parties, any action or proceeding in any court or tribunal asserting any of the Released Claims.

13.     Any person falling within the definition of the Class as certified by the Court in ¶1 above may, upon request, be excluded from the Class. Any such Person must submit to the Claims Administrator a request for exclusion ("Request for Exclusion"), so as to be received no later than twenty (20) days prior to the Settlement Hearing. A Request for Exclusion must state: (1) the name and address of the Person requesting exclusion; and (2) that the Person wishes to be excluded from the Class. Such Persons should also state their telephone number and their purchases, acquisitions and sales of AVS stock during the Class Period, including the dates, the numbers of shares, and prices paid or received per share for each such purchase or sale. If AVS stock was received in exchange for the stock of another company, such person should state the name of the other company, the number of shares of AVS stock received, and the date such stock was received. All Persons who submit valid and timely Requests for Exclusion in the manner set forth in this paragraph shall have no rights under the Stipulation, shall not share in the distribution of the Settlement Fund, and shall not be bound by the Stipulation or the Final Judgment.

14.     Any Class Member may appear and show cause, if he, she or it has any, why the proposed Settlement of the Litigation should or should not be approved as fair, reasonable and adequate, or why a judgment should or should not be entered thereon, why the Plan of Allocation should or should not be approved, or why attorneys' fees and expenses should or should not be

awarded to Plaintiffs' Counsel; provided, however, that no Class Member or any other Person

shall be heard or entitled to contest the approval of the terms and conditions of the proposed

Settlement, or, if approved, the Judgment to be entered thereon approving the same, or the order

approving the Plan of Allocation, or the attorneys' fees and expenses to be awarded to Plaintiffs'

Counsel unless that Person has (1) delivered by hand, or sent by overnight or first-class mail,

written objections and copies of any papers and briefs such that they are received on or before

twenty (20) days before the date of the Settlement Hearing by Robert N. Kaplan, Kaplan Fox &

Kilsheimer LLP, 805 Third Avenue, 22nd Floor, New York, NY 10022, Telephone (212) 687-

1980; Kenneth J. Vianale, Milberg Weiss Bershad Hynes & Lerach LLP, 5355 Town Center

Road, Suite 900, Boca Raton, FL 33486, Telephone (561) 361-5000; Myron M. Cherry, Myron

M. Cherry & Associates, 30 N. LaSalle Street, Chicago, IL 60602, Telephone (312) 372-2100;

Stanley H. Wakshlag, Akerman, Senterfitt & Edison, P.A., One S.E. 3rd Avenue, 28th Floor,

Miami, FL 33131, Telephone (305) 374-5600; John Freedman, Arnold & Porter, Thurman

Arnold Building, 555 Twelfth Street, N.W., Washington, D.C. 20004-1202, Telephone (202)

942-5000; and (2) filed said objections, papers and briefs with the Clerk of the United States

District Court for the Southern District of Florida, Miami Division, 301 North Miami Avenue,

Miami, FL 33128, on or before twenty (20) days before the date of the Settlement Hearing.  Any

Class Member who does not make his, her or its objection in the manner provided herein shall be

deemed to have waived such objection and shall forever be foreclosed from making any

objection to the fairness or adequacy of the proposed Settlement as incorporated in the

Stipulation, to the Plan of Allocation, and to the award of attorneys' fees and reimbursement of

expenses to Plaintiffs' Counsel, unless otherwise ordered by the Court.

-6-

15.     The passage of title and ownership of the Settlement Fund to the Escrow Agents in accordance with the terms and obligations of the Stipulation is approved. No Person that is not a member of the Class, a Lead Plaintiff or Plaintiffs' Counsel shall have any right to any portion of, or in the distribution of, the Settlement Fund unless otherwise ordered by the Court or otherwise provided in the Stipulation.

16.     All funds held by the Escrow Agents shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to the Stipulation and/or further order(s) of the Court.

17.     All papers in support of the Settlement, the Plan of Allocation and the application by Plaintiffs' Co-Lead Counsel for attorneys' fees or reimbursement of expenses shall be filed and served thirty (30) days prior to the Settlement Hearing.

18.     Neither the Defendants nor Defendants' counsel shall have any responsibility for the Plan of Allocation or any application for attorneys' fees or reimbursement of expenses submitted by Plaintiffs' Counsel, and such matters will be considered separately from the fairness, reasonableness and adequacy of the settlement.

19.     At or after the Settlement Hearing, the Court shall determine whether the Plan of Allocation proposed by Plaintiffs' Co-Lead Counsel, and any application for attorneys' fees or reimbursement of expenses shall be approved.

20.     All reasonable expenses incurred in identifying and notifying the members of the Class, as well as administering the Settlement Fund, shall be paid as set forth in the Stipulation. In the event the Settlement is not approved by the Court, or otherwise fails to become effective,

-7-

neither the Lead Plaintiffs nor any of their counsel shall have any obligation to repay any amounts actually and properly disbursed from or chargeable to the Notice and Administration Fund.

21.     Neither the Stipulation, nor any of its terms or provisions, nor any of the negotiations or proceedings connected with it, shall be construed as an admission or concession by Defendants of the truth of any of the allegations in the Litigation, or of any liability, fault or wrongdoing of any kind.

22.     The Court reserves the right to adjourn the date of the Settlement Hearing without further notice to the members of the Class, and retains jurisdiction to consider all further applications arising out of or connected with the proposed Settlement.  The Court may approve the Settlement, with such modifications as may be agreed to by the Settling Parties, if appropriate, without further notice to the Class.

Dated:_____                    _____
                                                THE HONORABLE FEDERICO MORENO
                                                UNITED STATES DISTRICT JUDGE


Conformed copies to all counsel of record

# EXHIBIT "A-1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No. 99-2560-CIV-MORENO/DUBE

H. ROBERT HOLMES, As Trustee for the
Holmes Family Trust, On Behalf of Himself and
All Others Similarly Situated,

> Plaintiff,

v.

DALE S. BAKER, GARLAN BRAITHWAITE,
HAROLD M. WOODY, JOSEPH E.
CIVILETTO, GEORGE F. BAKER III,
JEFFREY N. GREENBLATT, AVIATION
SALES COMPANY and ARTHUR ANDERSEN
LLP,

> Defendants.

**NOTICE OF PROPOSED SETTLEMENT
OF CLASS ACTION**

**EXHIBIT A-1**

TO:   ALL PERSONS WHO PURCHASED OR OTHERWISE ACQUIRED THE
      STOCK OF AVIATION SALES COMPANY N/K/A TIMCO AVIATION
      SERVICES, INC. ("AVS" OR THE "COMPANY") DURING THE PERIOD
      APRIL 30,1997 THROUGH AND INCLUDING APRIL 14, 2000

PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY. YOUR

RIGHTS MAY BE AFFECTED BY PROCEEDINGS IN THIS LITIGATION. PLEASE NOTE

THAT IF YOU ARE A SETTLEMENT CLASS MEMBER, YOU MAY BE ENTITLED TO

SHARE IN THE PROCEEDS OF THE SETTLEMENT DESCRIBED IN THIS NOTICE. TO

CLAIM YOUR SHARE OF THIS FUND, YOU MUST SUBMIT A VALID PROOF OF

CLAIM POSTMARKED ON OR BEFORE _____, 2002.

This Notice has been sent to you pursuant to Rule 23 of the Federal Rules of Civil

Procedure and an Order of the United States District Court for the Southern District of Florida,

Miami Division (the "Court"). The purpose of this Notice is to inform you of the proposed

settlement of this class action litigation and of the hearing to be held by the Court to consider the

fairness, reasonableness and adequacy of the settlement. This Notice describes the rights you

may have in connection with the settlement and what steps you may take in relation to the

settlement and this class action litigation.

The proposed settlement creates a fund in the amount of $11,900,000 in cash (plus accrued

interest) and the following Company securities: (i) 1,250,000 shares (the "Shares") of the

Company's authorized but unissued common stock (the "Common Stock"); (ii) $4 million of the

Company's new 8% Junior Subordinated Convertible PIK Notes due 2007 (the "Junior Notes");

and (iii) Common Stock purchase warrants to purchase 4,150,000 shares of the Company's

Common Stock at an exercise price of $5.16 per share (the "Warrants"), all of which are described

-1-

in detail in Exhibit "A" attached hereto. Based on Lead Plaintiffs' estimate of the number of outstanding shares that may have been damaged by Defendants' alleged conduct, the average recovery per damaged share would be approximately $1.08 in cash, 0.11 shares of Common Stock, $0.36 of Junior Notes, and 0.38 Warrants, before deduction of Court-approved fees and expenses. However, your actual recovery from this Fund will depend on a number of variables including the number of claimants, the price paid for the shares you purchased, the amount for which they were sold if they were sold, the expense of administering the claims process, and the timing of your purchases and sales, if any.

Lead Plaintiffs and Defendants do not agree on the average amount of damages per share that would be recoverable if Lead Plaintiffs were to have prevailed on each claim asserted. The issues on which they disagree include: (1) the appropriate economic model for determining the amount by which AVS stock was allegedly artificially inflated (if at all) during the Class Period; (2) the amount by which AVS's stock was allegedly artificially inflated (if at all) during the Class Period; (3) the effect of various market forces influencing the trading price of AVS's stock at various times during the Class Period; (4) the extent to which external factors, such as general market conditions, influenced the trading price of AVS's stock at various times during the Class Period; (5) the extent to which the various matters that plaintiffs alleged were materially false or misleading influenced (if at all) the trading price of AVS's stock at various times during the Class Period; (6) the extent to which the various allegedly adverse material facts that plaintiffs alleged were omitted influenced (if at all) the trading price of AVS's stock at various times during the Class Period; and (7) whether the statements made or facts allegedly omitted were false, material or otherwise actionable under the federal securities laws.

-2-

The Lead Plaintiffs believe that the proposed settlement is a good recovery and is in the best interests of the Class. Because of the risks associated with continuing to litigate and proceeding to trial, there was a danger that plaintiffs would not have prevailed on any of their claims, in which case the Class would receive nothing. For example, Lead Plaintiffs faced the possibility that many of the claims in this case could have been dismissed and, indeed, the 10(b) claim had been dismissed with prejudice against defendant Arthur Andersen LLP ("Arthur Andersen") and motions to dismiss the remaining 10(b) claims were pending at the time the settlement was entered into. In addition, the amount of damages recoverable by the Class was and is challenged by Defendants. Recoverable damages in this case are limited to losses caused by conduct actionable under applicable law and, had the Litigation gone to trial, Defendants intended to assert that all or most of the losses of Class Members were caused by non-actionable market, industry or general economic factors. Defendants would also assert that throughout the Class Period, the uncertainties and risks associated with AVS's business and financial condition were fully and adequately disclosed.

Plaintiffs' Counsel have not received any payment for their services in conducting this Litigation on behalf of the Representative Plaintiffs and the members of the Settlement Class, nor have they been reimbursed for their out-of-pocket expenditures. If the settlement is approved by the Court, Plaintiffs' Counsel will apply to the Court for attorneys' fees of 30% of the cash, Shares, Junior Notes and Warrants, and for reimbursement of costs and expenses not to exceed $300,000 to be paid from the cash settlement proceeds. If the amount requested by Plaintiffs' Counsel is approved by the Court, the average cost per potentially damaged share would be $0.351 in cash, 0.34 shares of Common Stock, $0.109 in Junior Notes and 0.113 in Warrants.

-3-

This Notice is not an expression of any opinion by the Court about the merits of any of the claims or defenses asserted by any party in this Litigation or the fairness, reasonableness or adequacy of the proposed settlement.

For further information regarding this settlement, you may contact: Robert N. Kaplan and Christine M. Fox, Kaplan Fox & Kilsheimer LLP, 805 Third Avenue, 22nd Floor, New York, NY 10022, Telephone (212) 687-1980; Kenneth J. Vianale, Milberg Weiss Bershad Hynes & Lerach LLP, 5355 Town Center Road, Suite 900, Boca Raton, FL 33486, Telephone (561) 361-5000; and Myron M. Cherry and Daniel Becka, Myron M. Cherry & Associates, 30 North LaSalle Street, Chicago, IL 60602, Telephone (312) 372-2100. Please do not contact any representative of the Company or Arthur Andersen.

## I.    NOTICE OF HEARING ON PROPOSED SETTLEMENT

A settlement hearing will be held on _____, 2002, at ___:___ __.m., before the Honorable Federico Moreno, United States District Judge of the Southern District of Florida, Miami Division, 301 North Miami Avenue, Miami, FL 33128  (the "Settlement Hearing"). The purpose of the Settlement Hearing will be to determine: (1) whether the proposed settlement consisting of the sum of $11,900,000 in cash, plus accrued interest, plus the Shares, Junior Notes and Warrants which are described more fully in Exhibit "A" attached hereto, should be approved by the Court as fair, reasonable, and adequate; (2) whether the securities to be issued pursuant to the Stipulation of Settlement, dated as of May 6, 2002 (the "Stipulation"), which are more fully described above and in Exhibit "A", should be exempt from registration with the Securities and Exchange Commission pursuant to Section 3(a)(10) of the Securities Act of 1933, 15 U.S.C. §77c(a)(10), and may be distributed to Class Members as freely tradeable securities; (3) whether

-4-

the proposed plan to distribute the settlement proceeds (the "Plan of Allocation") is fair,

reasonable and adequate; (4) whether the application by Plaintiffs' Counsel for an award of

attorneys' fees and reimbursement of expenses should be approved; and (5) whether the

Litigation should be dismissed with prejudice.  The Court may adjourn or continue the

Settlement Hearing without further notice to the Class.

## II.    DEFINITIONS USED IN THIS NOTICE

1.    "Class" means all Persons who purchased or otherwise acquired the stock of AVS

during the period April 30, 1997 through and including April 14, 2000, including those Persons

who purchased AVS stock in a secondary offering (the "Secondary Offering") which became

effective June 10, 1999.  Excluded from the Class are Defendants, members of each of the

immediate family of the Individual Defendants, any entity in which any Defendant has or had a

controlling interest, current and former directors and officers of AVS and members of their

immediate families, current and former partners of Arthur Andersen, and the legal

representatives, heirs, successors, or assigns of any such excluded Person or entity.

2.    "Class Member" or "Member of the Class" means a Person who falls within the

definition of the Class as set forth in ¶1 above.

3.    "Defendants" means AVS, Dale S. Baker, Garlan Braithwaite, Harold M. Woody,

Joseph E. Civiletto, George F. Baker III, Jeffrey N. Greenblatt and Arthur Andersen.

4.    "Released Parties" means the Defendants and each of a Defendant's past or

present directors, officers, employees, partners, members, principals, agents, underwriters,

insurers, co-insurers, reinsurers, controlling shareholders, attorneys, solicitors, banks or

investment banks, associates, personal or legal representatives, predecessors, successors, parents,

-5-

subsidiaries, divisions, joint ventures, assigns, spouses, heirs, related or affiliated entities, any

entity in which a Defendant has a controlling interest, any members of their immediate families,

or any trust of which any Defendant is the settlor or which is for the benefit of any Defendant

and/or member(s) of his or her family.

5.     "Released Claims" shall mean any and all claims, demands, rights, causes of

action or liabilities, of every nature and description whatsoever, whether based in law or equity,

on federal, state, local, statutory or common law, or any other law, rule or regulation, including

both known claims and Unknown Claims (as defined below), that have been or could have been

asserted directly, indirectly, representatively or in any other capacity, in any forum by the Class

Members, or any of them, or the successors or assigns of any of them, whether directly,

indirectly, representatively or in any other capacity, against any of the Released Parties, which

arise out of, or relate in any way to, the allegations, transactions, facts, events, matters,

occurrences, acts, representations or omissions involved, set forth, referred to, or that could have

been asserted in the Litigation, including, without limitation, claims for negligence, gross

negligence, breach of duty of care, breach of duty of loyalty, breach of duty of candor, fraud,

negligent misrepresentation, and breach of fiduciary duty, arising out of, based upon or related in

any way to the purchase, acquisition, sale or disposition of AVS securities by any Class Member

in the Secondary Offering or during the Class Period.

6.     "Unknown Claims" means any and all Released Claims which any Plaintiff or

Class Member does not know or suspect to exist in his, her or its favor at the time of the release

of the Released Parties, which, if known by him, her or it might have affected his, her or its

decision(s) with respect to the Stipulation.  With respect to any and all Released Claims, the

-6-

Settling Parties (collectively each of the Defendants and the Representative Plaintiffs on behalf

of themselves and Class Members) stipulate and agree that upon the effective date of the

settlement (as defined in the Stipulation), the Lead Plaintiffs and Defendants shall expressly, and

each Class Member shall be deemed to have, and by operation of the Judgment shall have,

expressly waived any and all provisions, rights and benefits conferred by any law of any state or

territory of the United States, or principle of common law, which is similar, comparable, or

equivalent to Cal. Civ. Code §1542, which provides:

> A general release does not extend to claims which the creditor does not know or
> suspect to exist in his favor at the time of executing the release, which if known
> by him must have materially affected his settlement with the debtor.

Lead Plaintiffs and Defendants acknowledge, and Class Members by operation of law shall be

deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of

Released Claims was separately bargained for and was a material element of the Settlement.

## III.    THE LITIGATION

The following cases were commenced in the United States District Court for the Southern

District of Florida, Miami Division, on or after September 23, 1999: (1) *Holmes v. Dale S. Baker,*

*et al.*, No. 99-2560-CIV-MORENO; (2) *Greenberg v. Dale S. Baker, et al.*, No. 99-2603-CIV-

MORENO; (3) *Feil v. Dale S. Baker, et al.*, No. 99-2965-CIV-MORENO; (4) *Smith v. Dale S.*

*Baker, et al.*, No. 99-2681-CIV-MORENO; (5) *Fowler v. Dale S. Baker, et al.*, No. 99-2710-

CIV-GOLD; and (6) *Mica v. Dale S. Baker, et al.*, No. 99-2657-CIV-MORENO.  By Order dated

January 19, 2000, these actions were consolidated for all purposes under the caption *Holmes v.*

*Dale S. Baker, et al.*, No. 99-2560-CIV-MORENO (the "Litigation").

On January 19, 2000, the Court appointed the "Holmes Family Plaintiffs" as Lead

Plaintiffs, and appointed the law firms of Kaplan Fox & Kilsheimer LLP ("Kaplan Fox"),

Milberg Weiss Bershad Hynes & Lerach LLP ("Milberg Weiss") and Myron M. Cherry &

Associates as Co-Lead Counsel for the Class.

On March 13, 2000, plaintiffs filed an Amended Class Action Complaint for violations of

the federal securities laws, which alleged violations of Sections 11 and 15 of the Securities Act

of 1933 ("Securities Act") and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934

("Exchange Act"), and Rule 10b-5 promulgated thereunder, against AVS, Dale S. Baker, Garlan

Braithwaite, Harold M. Woody, Joseph E. Civiletto and Arthur Andersen.  That complaint was

brought on behalf of all persons who purchased or otherwise acquired AVS stock during the

period March 26, 1998 through and including January 28, 2000, including persons who

purchased AVS stock in the Secondary Offering.

On September 14, 2000, plaintiffs filed a Second Amended Complaint which added

George F. Baker, III and Jeffrey N. Greenblatt as defendants for the Section 11 claim and

extended the class period to April 30, 1997 through and including April 14, 2000 (the "Class

Period").  Defendants moved to dismiss the Second Amended Complaint.

On August 22, 2001, after oral argument, the Honorable Federico Moreno issued an order

granting in part and denying in part Defendants' motions.  The Order denied Defendants'

motions to dismiss the claims brought under Sections 11 and 15 of the Securities Act, but

dismissed the claims brought under Section 10(b) of the Exchange Act with leave to replead,

except as to Arthur Andersen, which it dismissed with prejudice with respect to the 10(b) claim.

On September 21, 2001, plaintiffs filed the Third Amended Complaint (the "Complaint"). On October 22, 2001, defendant AVS and the Individual Defendants (against whom the 10(b) claims are alleged) filed new motions to dismiss the Section 10(b) and 20(a) claims. Briefing was completed on those motions on January 11, 2002. The settlement set forth in the Stipulation was reached prior to any decision on these motions.

## IV.    CLAIMS OF THE LEAD PLAINTIFFS AND BENEFITS OF SETTLEMENT

The Lead Plaintiffs believe that the claims asserted in the Litigation have merit and that the evidence developed to date supports the claims. However, Plaintiffs' Co-Lead Counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Litigation against the Defendants through trial and through appeals. Plaintiffs' Co-Lead Counsel have also taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as the Litigation, as well as the difficulties and delays inherent in such litigation. Plaintiffs' Co-Lead Counsel are also mindful of the inherent problems of proof under and possible defenses to the federal securities law violations asserted in the Litigation. Plaintiffs' Co-Lead Counsel believe that the settlement set forth in the Stipulation confers substantial benefits upon the Settlement Class (as defined below). Based on their evaluation, Plaintiffs' Co-Lead Counsel have determined that the settlement set forth in the Stipulation of Settlement is in the best interests of the Lead Plaintiffs and the Settlement Class.

## V.     DEFENDANTS' STATEMENT AND DENIALS OF WRONGDOING AND LIABILITY

The Defendants have denied and continue to deny each and all of the claims and contentions alleged by the Lead Plaintiffs in the Litigation.  The Defendants expressly have denied and continue to deny all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Litigation.  The Defendants also have denied and continue to deny, *inter alia*, the allegations that the Lead Plaintiffs or the Class have suffered damage, that the price of AVS stock was artificially inflated by reasons of alleged misrepresentations, non-disclosures or otherwise, or that the Lead Plaintiffs or the Class were harmed by the conduct alleged in the Litigation.

Nonetheless, the Defendants have concluded that further conduct of the Litigation would be protracted and expensive, and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in the Stipulation.  The Defendants also have taken into account the uncertainty and risks inherent in any litigation, especially in complex cases like the Litigation.  The Defendants have, therefore, determined that it is desirable and beneficial to them that the Litigation be settled in the manner and upon the terms and conditions set forth in the Stipulation.

## VI.    TERMS OF THE PROPOSED SETTLEMENT

The Defendants have paid or caused to be paid into an escrow account, pursuant to the terms of the Stipulation, cash in the amount of $11,900,000 which has been earning and will continue to earn interest for the benefit of the Settlement Class.  In addition, the Stipulation of

-10-

Settlement provides for the issuance by the Company of the Shares, Junior Notes and Warrants described above and in Exhibit "A" hereto.

A portion of the settlement proceeds will be used for certain administrative expenses, including costs of printing and mailing this Notice, the cost of publishing a newspaper notice, payment of any taxes assessed against the Settlement Fund and costs associated with the processing of claims submitted.  In addition, as explained below, a portion of the Settlement Fund may be awarded by the Court to Plaintiffs' Counsel as attorneys' fees and for reimbursement of out-of-pocket expenses.  The balance of the Settlement Fund (the "Net Settlement Fund") will be distributed according to the Plan of Allocation described below (or such Plan of Allocation as is approved by the Court) to Settlement Class Members who submit valid and timely Proof of Claim forms.

The Stipulation provides that some or all of the Defendants may withdraw from and terminate the settlement in the event that claimants who purchased or acquired in excess of a certain number of shares during the Class Period exclude themselves from the Class.  The Stipulation also provides that plaintiffs may terminate the settlement with AVS and the Individual Defendants and/or Arthur Ansersen if there are bankruptcy filings and settlement proceeds have to be returned.

## VII.   PLAN OF ALLOCATION

The Net Settlement Fund will be distributed to Settlement Class Members who submit valid, timely Proof of Claim forms ("Authorized Claimants") under the Plan of Allocation described below.   The Plan of Allocation provides that you will be eligible to participate in the

distribution of the Settlement Fund only if you have a net loss on all transactions in AVS stock during the Settlement Class Period.

The Plan of Allocation reflects an assessment of the damages that could have been recovered and Plaintiffs' Co-Lead Counsel's assessment of the likelihood of establishing liability for various portions of the Class Period.

### 1.    PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS AMONG CLASS MEMBERS

a.    The $11,900,000 Cash Settlement Amount and the interest earned thereon shall be the Gross Cash Settlement Fund.  The Gross Cash Settlement Fund, less all taxes, approved costs, fees and expenses (the "Net Cash Settlement Fund"), and each of the securities, less all taxes, approved costs, fees and expenses (the "Net Common Stock," "Net Junior Notes" and "Net Warrants"), shall be distributed to members of the Class who file acceptable Proofs of Claim ("Authorized Claimants").

b.    The Claims Administrator shall determine each Authorized Claimant's *pro rata* share of the Net Cash Settlement Fund, Net Common Stock, Net Junior Notes and Net Warrants based upon each Authorized Claimant's "Recognized Claim."

c.    The following proposed Plan of Allocation reflects the proposition that the decreases in the price of AVS common stock following the disclosures made by AVS on September 17, 1999 (before the market opened), January 28, 2000, and April 14, 2000 eliminated the artificial inflation that Defendants' alleged misrepresentations may have caused.  On September 16, 1999, AVS's common stock closed at $29.375 per share.  On September 17, 1999, following AVS's announcement, AVS's common stock closed at $21.00 per share, an $8.375 decline.  On January

27, 2000, AVS's common stock closed at $15.313 per share.  After AVS's announcement on

January 28, 2000, before the market opened, AVS's common stock closed on January 28 at $9.75

per share, a decline of $5.56.  After the close of trading, on April 14, 2000, AVS made final

disclosures of the information previously alleged to have been misrepresented, causing a further

$1.063 price decline, from $6.063 at the close of trading on April 14, 2000, to $5.00 per share at

the close of trading on Monday, April 17, 2000.  These price declines total approximately $15

per share, which is the maximum loss that will be Recognized for purposes of the settlement for

open market purchases.

    d.  "Recognized Claims" will be calculated for purposes of the settlement as follows:

        1.  For shares of AVS common stock purchased or acquired[1] during the period April

30, 1997 and September 16, 1999, inclusive, and

        (a)    Sold at a loss on or before the close of trading on September 16, 1999, an

Authorized Claimant's "Recognized Claim" shall mean 10%[2] of the purchase price (including

commissions, etc.) less the sales proceeds received (net of commissions, etc.);

        (b)    Sold at a loss during the period September 17, 1999 through and including

the close of trading on January 27, 2000, an Authorized Claimant's "Recognized Claim" shall

mean the *lesser* of: (a) $8.375 per share, or (b) the purchase price (including commissions, etc.)

less the sales proceeds received (net of commissions, etc.);

---

[1]    For shares of AVS which were acquired in exchange for shares of another
company acquired by AVS, the purchase price of the AVS shares shall be deemed to be the
closing price of AVS shares on the closing date of the acquisition.

[2]    This discount to one tenth of the loss reflects an offset of the inflation received on
the sale eliminating the inflation paid on the purchase.

(c)     Sold at a loss during the period after the close of trading on January 27, 2000 through and including the close of trading on April 14, 2000, an Authorized Claimant's "Recognized Claim" shall mean the *lesser* of: (a) $13.935 per share, or (b) the purchase price (including commissions, etc.) less the sales proceeds received (net of commissions, etc.);

(d)     Still held as of the close of trading on April 14, 2000, an Authorized Claimant's "Recognized Claim" shall mean:

(i)     If such shares were sold during the period April 15, 2000 through July 13, 2000, the claim per share is the lesser of $15 per share or the purchase price less the sales price per share.

(ii)     If such shares were still held as of the close of trading on July 13, 2000, the claim per share is the lesser of $15 per share or the purchase price less $6 per share.

2.   For shares of AVS common stock purchased or acquired during the period September 17, 1999 through and including the close of trading on January 27, 2000, and

(a)     Sold at a loss on or before the close of trading on January 27, 2000, an Authorized Claimant's "Recognized Claim" shall mean 10%[3] of the purchase price (including commissions, etc.) less the sales proceeds received (net of commissions, etc.);

(b)     Sold at a loss during the period after the close of trading on January 27, 2000 through and including the close of trading on April 14, 2000, an Authorized Claimant's "Recognized Claim" shall mean  the *lesser* of: (a) $5.56 per share, or (b) the purchase price (including commissions, etc.) less the sales proceeds received (net of commissions, etc.);

---

[3]     This discount to one tenth of the loss reflects an offset of the inflation received on the sale eliminating the inflation paid on the purchase.

-14-

(c)     Still held as of the close of trading on April 14, 2000, an Authorized Claimant's "Recognized Claim" shall mean:

(i)     If such shares were sold during the period April 15, 2000 through July 13, 2000, the claim per share shall be the lesser of $6.623 per share or the purchase price less the sales price per share.

(ii)     If such shares were still held as of the close of trading on July 13, 2000, the claim per share shall be the lesser of $6.623 per share or the purchase price less $6 per share.

3.   For shares of AVS common stock purchased or acquired during the period January 28, 2000, through and including the close of trading on April 14, 2000, and

(a)     Sold at a loss on or before the close of trading on April 14, 2000, an Authorized Claimant's "Recognized Claim" shall mean 10%[4] of the purchase price (including commissions, etc.) less the sales proceeds received (net of commissions, etc.);

(b)     Still held as of the close of trading on April 14, 2000, an Authorized Claimant's "Recognized Claim" shall mean:

(i)     If such shares were sold during the period April 15, 2000 through July 13, 2000, the claim per share shall be the lesser of $1.063 or the purchase price less, the sales price per share.

---

[4]     This discount to one tenth of the loss reflects an offset of the inflation received on the sale eliminating the inflation paid on the purchase.

-15-

(ii)     If such shares were still held as of the close of trading on July 13, 2000, the claim per share shall be the lesser of $1.063 per share, or the purchase price less $6 per share.

4.  For shares of AVS common stock purchased in the Secondary Offering which became effective June 10, 1999, an Authorized Claimant's "Recognized Claim" shall be either (i) the amount calculated pursuant to the above formulae, or *if greater* (ii) the purchase price paid, which in the Secondary Offering was $36.69 per share, less either (a) if the Secondary Offering shares were sold on or before March 13, 2000, the sales proceeds received (net of commissions, etc.), or (b) if the Secondary Offering shares were sold after March 13, 2000 – $36.69 per share, less the greater of either the sales proceeds received (net of commissions, etc.) or $8.38 per share.[5]

e.  Class Members who do not file acceptable Proofs of Claim will not share in the settlement proceeds.  Class Members who do not either file a request for exclusion or file acceptable Proofs of Claim will nevertheless be bound by the Judgment (as defined below) and the settlement.

f.  Purchases during the Class Period will be matched against sales during the Class Period on a First-In, First-Out basis.  Transactions resulting in a gain shall not be included.

g.  Each Authorized Claimant shall be allocated a *pro rata* share of the Net Cash Settlement Securities based on his, her or its "Recognized Claim" as compared to the total "Recognized Claims" of all Authorized Claimants.

---

[5]     AVS's stock price closed at $8.38 per share on March 13, 2000, the date plaintiffs first asserted a Section 11 claim.

h.   No shares of Common Stock shall be issued to any Authorized Claimant who would be entitled to receive fewer than 100 shares.  If a claimant is entitled to receive fewer than 100 shares, in lieu of shares, the claimant shall be entitled to receive additional cash based upon the closing price of the Common Stock ten business days prior to the distribution date.  No fractional shares of Common Stock shall be issued.  The shares shall be rounded up or down to the next share (i.e., .51 of a share shall entitle the claimant to another share, .49 of share or less of a share shall not be issued).  No cash adjustment shall be made with respect to the rounding of the fractional amount of a share.

i.   No Warrants for fractional shares of the Company's Common Stock shall be issued and no Warrants shall be issued to any Authorized Claimant who would be entitled to receive Warrants to purchase fewer than 100 shares.  Fractional warrants shall be rounded up or down to the next warrant as per the above example.  If a claimant is entitled to receive a  warrant to purchase fewer than 100 shares, instead of the warrant, the claimant shall be entitled to receive additional cash valuing each warrant that it did not receive at $0.40.  No cash adjustment shall be made with respect to the rounding of the fractional amount of a Warrant.

j.   The Junior Notes shall have a face value of at least $100 but claimants can receive Junior Notes over $100 of face value in less than $100 incremental amounts (i.e.) $166.  However, no fractional note of less than $1 shall be issued and again fractional amounts of less than $1 shall be rounded up or down to the next nearest dollar.  Further, no Junior Notes shall be issued to any claimant who would be entitled to receive less than $100 face amount of Junior Notes.  Instead of Junior Notes of less than $100 face amount, the claimant shall be entitled to

additional cash valuing each $1 Junior Note at $0.50.  No cash adjustment shall be made with respect to the rounding of a fractional amount of $1 of a Junior Note.

k.   The date of purchase or sale is the "contract" or "trade" date as distinguished from the "settlement" date.  The determination of the price paid per share and the price received per share, shall be exclusive of all commissions taxes, fees and charges.

l.   For Settlement Class Members who made multiple purchases or multiple sales during the Settlement Class Period, the earliest subsequent sale shall be matched with the earliest purchase and chronologically thereafter for purposes of the claim calculations.

m.   The Court has reserved jurisdiction to allow, disallow or adjust the claim of any Settlement Class Member on equitable grounds.

## VIII.   ORDER CERTIFYING A CLASS FOR PURPOSES OF SETTLEMENT

On _____, 2002, the Court certified a class, for settlement purposes only. The Settlement Class is defined as all of the Members of the Class.

## IX.   PARTICIPATION IN THE CLASS

If you fall within the definition of the Class, you will remain a Class Member unless you elect to be excluded from the Class.  If you do not request to be excluded from the Class, you will be bound by any judgment entered with respect to the settlement of the Litigation whether or not you file a Proof of Claim.

**If you wish to remain a Settlement Class Member, you need do nothing (other than timely file a Proof of Claim and Release if you wish to participate in the distribution of the Net Settlement Fund).  Your interests will be represented by Plaintiffs' Co-Lead Counsel.**

-18-

If you choose, you may enter an appearance individually or through your own counsel at your own expense.

**TO PARTICIPATE IN THE DISTRIBUTION OF THE NET SETTLEMENT FUND, YOU MUST TIMELY COMPLETE AND RETURN THE PROOF OF CLAIM AND RELEASE FORM THAT ACCOMPANIES THIS NOTICE.** The Proof of Claim and Release must be postmarked on or before _____, 2002, and delivered to the Claims Administrator at the address below.  Unless the Court orders otherwise, if you do not timely submit a valid Proof of Claim, you will be barred from receiving any payments from the Net Settlement Fund, but will in all other respects be bound by the provisions of the Stipulation and the Judgment.

**X.     EXCLUSION FROM THE CLASS**

Each Member of the Class shall be bound by all determinations and judgments in this Action concerning the settlement, whether favorable or unfavorable, unless such person shall mail, by first class mail, a written request for exclusion from the Class, postmarked no later than _____, 2002, addressed to Aviation Sales Securities Litigation Exclusion, c/o Gilardi & Co. LLC, P.O. Box 990, Corte Madera, CA 94976-0990.  No person may exclude himself from the Class after that date.  In order to be valid, a Request for Exclusion must state: (1) the name and address of the Person requesting exclusion; and (2) that the Person wishes to be excluded from the Class.  Such Persons should also state their telephone number and their purchases, acquisitions and sales of AVS stock made during the Class Period, including the dates, the number of shares, and prices paid or received per share for each such purchase or sale. If AVS stock was received in exchange for the stock of another company, such Person should

-19-

state the name of the other company, the number of shares of AVS stock received, and the date

such stock was received.  All Persons who submit valid and timely Requests for Exclusion in the

manner set forth in this paragraph shall have no rights under the Stipulation, shall not share in the

distribution of the Settlement Fund, and shall not be bound by the Stipulation or the Judgment.

**XI.    DISMISSAL AND RELEASES**

If the proposed settlement is approved, the Court will enter a Final Judgment and Order

of Dismissal with Prejudice ("Judgment").  The Judgment will dismiss the Released Claims with

prejudice as to all Defendants.

The Judgment will provide that all Class Members who do not validly and timely request

to be excluded from the Class shall be deemed to have released and forever discharged all

Released Claims (to the extent members of the Class have such claims) against all Released

Parties.  The Judgment shall also provide that the Class Members shall be permanently barred

and enjoined from instituting, commencing or prosecuting, either directly, indirectly,

representatively or in any other capacity, any and all claims, demands, rights, causes of action or

liabilities, of every nature and description whatsoever, whether based in law or equity, on federal,

state, local, statutory or common law, or any other law, rule or regulation, including both known

claims and Unknown Claims, that have been or could have been asserted directly, indirectly,

representatively or in any other capacity, in any forum by the Class Members, or any of them, or

the successors or assigns of any of them, against any of the Released Parties, which arise out of,

or relate in any way to, or could have been asserted based upon, the allegations, transactions,

facts, events, matters, occurrences, acts, representations or omissions involved, set forth, referred

to, or which relate directly or indirectly to the Litigation, including, without limitation, claims for

negligence, gross negligence, breach of duty of care, breach of duty of loyalty, breach of duty of candor, fraud, negligent misrepresentation, and breach of fiduciary duty.

## XII.   APPLICATION FOR FEES, EXPENSES AND AWARDS

At the Settlement Hearing, Plaintiffs' Co-Lead Counsel will request the Court to award attorneys' fees of 30% of the settlement proceeds, including the cash, Shares of Common Stock, Junior Notes and Warrants, plus reimbursement of expenses, not to exceed $300,000, which were advanced in connection with the Litigation, plus interest thereon.

To date, Plaintiffs' Counsel have not received any payment for their services in conducting this Litigation on behalf of plaintiffs and the Members of the Class, nor has counsel been reimbursed for their out-of-pocket expenses.  The fee requested by Plaintiffs' Co-Lead Counsel would compensate Plaintiffs' Counsel for their efforts in achieving the Settlement Fund for the benefit of the Settlement Class, and for their risk in undertaking this representation on a contingency basis.  The fee requested is within the range of fees awarded to plaintiffs' counsel under similar circumstances in litigation of this type.

## XIII.   CONDITIONS FOR SETTLEMENT

The settlement is conditioned upon the occurrence of certain events described in the Stipulation.  Those events include, among other things: (1) entry of the Judgment by the Court, as provided for in the Stipulation; and (2) expiration of the time to appeal from or alter or amend the Judgment.  If, for any reason, any one of the conditions described in the Stipulation is not met, the Stipulation might be terminated and, if terminated, will become null and void, and the parties to the Stipulation will be restored to their respective positions as of May 3, 2002.

-21-

## XIV.   THE RIGHT TO BE HEARD AT THE HEARING

Any Class Member who has not validly and timely requested to be excluded from the

Class, and who objects to any aspect of the settlement, the Plan of Allocation, the adequacy of

representation by Plaintiffs' Co-Lead Counsel, or the application for attorneys' fees, costs and

expenses, may appear and be heard at the Settlement Hearing.  Any such Person must submit and

serve a written notice of objection, to be received on or before _____, 2002, by each

of the following:

<div style="margin-left:2em">

CLERK OF THE COURT
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
301 North Miami Avenue
Miami, FL 33128

KAPLAN FOX & KILSHEIMER LLP
ROBERT N. KAPLAN
805 Third Avenue, 22nd Floor
New York, NY 10022

MILBERG WEISS BERSHAD HYNES
 & LERACH LLP
KENNETH J. VIANALE
5355 Town Center Road, Suite 900
Boca Raton, FL 33486

MYRON M. CHERRY & ASSOCIATES
MYRON M. CHERRY
30 North LaSalle Street
Chicago, IL 60602

Plaintiffs' Co-Lead Counsel

</div>

AKERMAN, SENTERFITT & EDISON, P.A.
STANLEY H. WAKSHLAG
One S.E. 3rd Avenue, 28th Floor
Miami, FL 33131

Counsel for Defendant Aviation Sales Company
n/k/a Timco Aviation Services, Inc.

ARNOLD & PORTER
JOHN FREEDMAN
Thurman Arnold Building
555 Twelfth Street, N.W.
Washington, D.C. 20004-1202

Counsel for Defendant Arthur Andersen LLP

The notice of objection must demonstrate the objecting Person's membership in the Class,

including the number of AVS shares purchased, acquired and sold during the Class Period, and

contain a statement of the reasons for objection.  Only members of the Settlement Class who

have submitted written notices of objection in this manner will be entitled to be heard at the

Settlement Hearing, unless the Court orders otherwise.

## XV.   SPECIAL NOTICE TO NOMINEES

If you hold any AVS stock purchased during the Class Period as nominee for a beneficial

owner, then, within ten (10) days after you receive this Notice, you must either: (1) send a copy

of this Notice and the Proof of Claim by first class mail to all such Persons; or (2) provide a list

of names and addresses of such Persons to the Claims Administrator:

AVS Securities Litigation
c/o Gilardi & Co. LLC
P.O. Box 990
Corte Madera, CA 94976-0990

If you choose to mail the Notice and Proof of Claim yourself, you may obtain from the Claims Administrator (without cost to you) as many additional copies of these documents as you will need to complete the mailing.

Regardless of whether you choose to complete the mailing yourself or elect to have the mailing performed for you, you may obtain reimbursement for or advancement of reasonable administrative costs actually incurred or expected to be incurred in connection with forwarding the Notice and Proof of Claim and which would not have been incurred but for the obligation to forward the Notice and Proof of Claim, upon submission of appropriate documentation to the Claims Administrator.

## XVI.   EXAMINATION OF PAPERS

This Notice is a summary and does not describe all of the details of the Stipulation.  For full details of the matters discussed in this Notice, you may review the Stipulation filed with the Court, which may be inspected during business hours, at the office of the Clerk of the Court, Southern District of Florida, Miami Division, 301 North Miami Avenue, Miami, FL 33128.

If you have any questions about the settlement of the Litigation, you may contact Plaintiffs' Co-Lead Counsel by writing:

> KAPLAN FOX & KILSHEIMER LLP
> ROBERT N. KAPLAN
> 805 Third Avenue, 22nd Floor
> New York, NY 10022
> (212) 687-1980
>
> MILBERG WEISS BERSHAD HYNES & LERACH LLP
> KENNETH J. VIANALE
> 5355 Town Center Road, Suite 900
> Boca Raton, FL 33486
> (561) 361-5000

MYRON M. CHERRY & ASSOCIATES
MYRON M. CHERRY
30 North LaSalle Street
Chicago, IL 60602
(312) 372-2100

**DO NOT TELEPHONE THE COURT REGARDING THIS NOTICE.**

DATED: _____, 2002          _____

BY ORDER OF THE UNITED STATES
DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA,
MIAMI DIVISION

# EXHIBIT "A-2

{MI635060;1}

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No. 99-2560-CIV-MORENO/DUBE

H. ROBERT HOLMES, As Trustee for the
Holmes Family Trust, On Behalf of Himself and
All Others Similarly Situated,

                    Plaintiff,

        v.

DALE S. BAKER, GARLAN BRAITHWAITE,
HAROLD M. WOODY, JOSEPH E.
CIVILETTO, GEORGE F. BAKER III,
JEFFREY N. GREENBLATT, AVIATION
SALES COMPANY and ARTHUR ANDERSEN
LLP,

                    Defendants.

**PROOF OF CLAIM AND RELEASE**

**EXHIBIT A-2**

## I.    GENERAL INSTRUCTIONS

1.      To recover as a member of the Class based on your claims in the action entitled *Holmes v. Dale S. Baker, et al.*, 99-2560-CIV-MORENO (the "Litigation"), you must complete and, on page ____ hereof, sign this Proof of Claim and Release.  If you fail to file a properly addressed (as set forth in ¶3 below) Proof of Claim and Release, your claim may be rejected and you may be precluded from any recovery from the Settlement Fund created in connection with the proposed settlement of the Litigation.

2.      Submission of this Proof of Claim and Release, however, does not assure that you will share in the proceeds of settlement in the Litigation.

3.      **YOU MUST MAIL YOUR COMPLETED AND SIGNED PROOF OF CLAIM AND RELEASE POSTMARKED ON OR BEFORE _____, 2002, ADDRESSED AS FOLLOWS:**

> AVS Securities Litigation
> c/o Gilardi & Co. LLC
> P.O. Box 990
> Corte Madera, CA 94976-0990

If you are NOT a member of the Class, as defined in the "Notice of Proposed Settlement of Class Action" (the "Notice"), DO NOT submit a Proof of Claim and Release form.

4.      If you are a member of the Class and you did not timely request exclusion, you are bound by the terms of any judgment entered in the Litigation **WHETHER OR NOT YOU SUBMIT A PROOF OF CLAIM AND RELEASE FORM.**

## II.   DEFINITIONS

1.     "Defendants" means Aviation Sales Company, now known as TIMCO Aviation Services, Inc. ("AVS" or the "Company"), Dale S. Baker, Garlan Braithwaite, Harold M. Woody, Joseph E. Civiletto, George F. Baker, III, Jeffrey N. Greenblatt and Arthur Andersen LLP ("Arthur Andersen").  "Defendant" means any one of the Defendants.

## III.   CLAIMANT IDENTIFICATION

1.     If you purchased AVS stock and held the certificate(s) in your name, you are the beneficial purchaser as well as the record purchaser.  If, however, you purchased AVS stock and the certificate(s) were registered in the name of a third party, such as a nominee or brokerage firm, you are the beneficial purchaser and the third party is the record purchaser.

2.     Use Part I of this form entitled "Claimant Identification" to identify each purchaser of record ("nominee"), if different from the beneficial purchaser of AVS stock which forms the basis of this claim.  THIS CLAIM MUST BE FILED BY THE ACTUAL BENEFICIAL PURCHASER OR PURCHASERS, OR THE LEGAL REPRESENTATIVE OF SUCH PURCHASER OR PURCHASERS, OF THE AVS STOCK UPON WHICH THIS CLAIM IS BASED.

3.     All joint purchasers must sign this claim.  Executors, administrators, guardians, conservators and trustees must complete and sign this claim on behalf of Persons represented by them and their authority must accompany this claim and their titles or capacities must be stated. The Social Security (or taxpayer identification) number and telephone number of the beneficial owner may be used in verifying the claim.  Failure to provide the foregoing information could delay verification of your claim or result in rejection of your claim.

-2-

## IV.   CLAIM FORM

1.      Use Part II of this form entitled "Schedule of Transactions in AVS Stock" to supply all required details of your transaction(s) in AVS stock.  If you need more space or additional schedules, attach separate sheets giving all the required information in substantially the same form.  Sign and print or type your name on each additional sheet.

2.      On the schedules, provide all of the requested information with respect to (i) **all** of your purchases and **all** of your sales of AVS stock which took place at any time from April 30, 1997 through and including April 14, 2000 (the "Class Period"), whether such transactions resulted in a profit or a loss and (ii) **all** of your sales of AVS stock which took place at any time from April 15, 2000 through and including July 13, 2000.  Failure to report all such transactions may result in the rejection of your claim.  If you received AVS stock during the period April 30, 1997 through April 14, 2000 in exchange for stock of another company acquired by AVS, list the name of the company, the number of shares in the other company you held, the number of shares of AVS stock you received and the date of receipt.

3.      List each transaction in the Class Period separately and in chronological order, by trade date, beginning with the earliest.  You must accurately provide the month, day and year of each transaction.

4.      The date covering a "short sale" is deemed to be the date of purchase of AVS stock.  The date of a "short sale" is deemed to be the date of sale of AVS stock.

5.      Brokers' confirmations or other documentation of your transactions in AVS stock should be attached to your claim.  Failure to provide this documentation could delay verification of your claim or result in rejection of your claim.

-3-

6.     For each transaction in AVS stock, the date of purchase and sale is the "trade" or "contract" date, and not the "settlement" or "payment" date.

7.     The purchase price is the price paid exclusive of commissions or other expenses. The sale price is the price received exclusive of commissions or other expenses.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

*Holmes v. Dale S. Baker, et al.,*
No. 99-2560-CIV-MORENO

**PROOF OF CLAIM**

**Must be Postmarked No Later Than:**
**_____, 2002**

Please Type or Print

PART I:        CLAIMANT IDENTIFICATION

_____

Beneficial Owner's Name (First, Middle, Last)

_____

Street Address

_____          _____

City                                                        State                    Zip Code

_____          _____            Individual

Social Security Number or
Taxpayer Identification Number              _____            Corporation/Other

_____     _____(work)

Area Code             Telephone Number

_____     _____(home)

Area Code             Telephone Number

_____

Record Owner's Name (if different from beneficial owner listed above)

-5-

PART II:      SCHEDULE OF TRANSACTIONS IN AVS STOCK

     A.      Number of shares of AVS stock held at the close of trading on April 29, 1997:

     B.      Purchases (April 30, 1997 - April 14, 2000, inclusive) of AVS stock:

| Trade Date Mo.      Day      Year | No. of Shares Purchased | Total Purchase Price |
|---|---|---|
| 1. _____ | _____ | _____ |
| 2. _____ | _____ | _____ |
| 3. _____ | _____ | _____ |

Please indicate which of your purchases, if any, were made in AVS's secondary offering which became effective June 10, 1999.

     C.      Acquisitions of AVS common stock between April 30, 1997 through April 14, 2000, inclusive (AVS stock received in exchange for stock of a company acquired by AVS):[1]

| Name of Acquired Company | No. of Shares in Acquired Company | No. of Shares of AVS Stock Received | Date Shares Received |
|---|---|---|---|
| 1._____ | _____ | _____ | _____ |
| 2._____ | _____ | _____ | _____ |
| 3._____ | _____ | _____ | _____ |

     D.      Sales (April 30, 1997 - April 14, 2000, inclusive) of AVS stock:

| Trade Date Mo.      Day      Year | No. of Shares Sold | Net Sales Price |
|---|---|---|
| 1. _____ | _____ | _____ |
| 2. _____ | _____ | _____ |
| 3. _____ | _____ | _____ |

_____

    [1]      During the Class Period, AVS issued stock in connection with the following acquisitions: (1) Aerocell Structures, Inc. (9/30/97); (2) Apex Manufacturing, Inc. (12/31/97); (3) Caribe Aviation, Inc. (3/9/98); and (4) Whitehall Corp. (7/31/98).

-6-

E.    Number of shares of AVS stock held at close of trading on April 14, 2000:

_____

F.    Sales (April 15, 2000 - July 13, 2000, inclusive) of AVS stock:

| Trade Date | | | No. of | Net |
|---|---|---|---|---|
| Mo. | Day | Year | Shares Sold | Sales Price |
| 1. _____ | | | _____ | _____ |
| 2. _____ | | | _____ | _____ |
| 3. _____ | | | _____ | _____ |

G.    Number of shares of AVS stock held at close of trading on July 13, 2000:

_____

If you require additional space, attach extra schedules in the same format as above. Sign and print your name on each additional page.

YOU MUST READ AND SIGN THE RELEASE ON PAGE ____.

## V.    SUBMISSION TO JURISDICTION OF COURT AND ACKNOWLEDGEMENTS

I submit this Proof of Claim and Release under the terms of the Stipulation of Settlement (the "Stipulation") described in the Notice. I also submit to the jurisdiction of the United States District Court for the Southern District of Florida, Miami Division, with respect to my claim as a Class Member and for purposes of enforcing the release and covenant not to sue set forth herein. I further acknowledge that I am bound by and subject to the terms of any judgment that may be entered in the Litigation. I agree to furnish additional information to Plaintiffs' Co-Lead Counsel to support this claim if required to do so. I have not submitted any other claim covering the same purchases or sales of AVS stock during the Class Period and know of no other Person having done so on my behalf.

## VI.   RELEASE

1.      I hereby acknowledge full and complete satisfaction of, and do hereby fully,

finally and forever settle, release and discharge from the Released Claims each and all of the

Released Parties, defined as each Defendant and each of a Defendant's past or present directors,

officers, employees, partners, members, principals, agents, underwriters, insurers, co-insurers,

reinsurers, controlling shareholders, attorneys, solicitors, banks or investment banks, associates,

personal or legal representatives, predecessors, successors, parents, subsidiaries, divisions, joint

ventures, assigns, spouses, heirs, related or affiliated entities, any entity in which a Defendant has

a controlling interest, any members of their immediate families, or any trust of which any

Defendant is the settlor or which is for the benefit of any Defendant and/or member(s) of his or

her family.

2.      "Released Claims" shall mean any and all claims, demands, rights, causes of

action or liabilities, of every nature and description whatsoever, whether based in law or equity,

on federal, state, local, statutory or common law, or any other law, rule or regulation, including

both known claims and Unknown Claims (as defined below), that have been or could have been

asserted directly, indirectly, representatively or in any other capacity, in any forum by the Class

Members, or any of them, or the successors or assigns of any of them, whether directly,

indirectly, representatively or in any other capacity, against any of the Released Parties, which

arise out of, or relate in any way to, the allegations, transactions, facts, events, matters,

occurrences, acts, representations or omissions involved, set forth, referred to, or that could have

been asserted in the Litigation, including, without limitation, claims for negligence, gross

negligence, breach of duty of care, breach of duty of loyalty, breach of duty of candor, fraud,

negligent misrepresentation, and breach of fiduciary duty, arising out of, based upon or related in

any way to the purchase, acquisition, sale or disposition of AVS securities by any Class Member in the secondary offering which became effective June 10, 1999 or during the Class Period.

      3.     "Unknown Claims" means any and all Released Claims which any Plaintiff or Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Parties, which, if known by him, her or it might have affected his, her or its decision(s) with respect to the Stipulation. With respect to any and all Released Claims, the Settling Parties (defined as each of the Defendants and the Representative Plaintiffs on behalf of themselves and Class Members) stipulate and agree that upon the Effective Date, the Lead Plaintiffs (as defined in the Notice) and Defendants shall expressly, and each Class Member shall be deemed to have, and by operation of the Judgment shall have, expressly waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code §1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Lead Plaintiffs and Defendants acknowledge, and Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims was separately bargained for and was a material element of the Settlement.

      4.     I hereby covenant and agree to refrain from instituting, commencing or prosecuting, either directly, indirectly, representatively or in any other capacity, any and all claims, demands, rights, causes of action or liabilities, of every nature and description whatsoever, whether based in law or equity, on federal, state, local, statutory or common law, or any other law, rule or regulation, including both known claims and Unknown Claims, that have

been or could have been asserted directly, indirectly, representatively or in any other capacity, in any forum by me or my successors or assigns, against any of the Released Parties, which arise out of, or relate in any way to, or could have been asserted based upon, the allegations, transactions, facts, events, matters, occurrences, acts, representations or omissions involved, set forth, referred to, or which related directly or indirectly to the Litigation, including, without limitation, claims for negligence, gross negligence, breach of duty of care, breach of duty of loyalty, breach of duty of candor, fraud, negligent misrepresentation, and breach of fiduciary duty.

5.      This release and covenant not to sue shall be of no force or effect unless and until the Court approves the Stipulation and the Settlement becomes effective on the Effective Date (as defined in the Stipulation).

6.      I (we) hereby warrant and represent that I (we) have included information about all of my (our) transactions in AVS stock which occurred during the Class Period as well as the number of shares of AVS stock held by me (us) at the close of trading on April 29, 1997, the close of trading on April 14, 2000, the number of shares of AVS stock sold by me (us) during the period April 15, 2000 through July 13, 2000, and the number of shares of AVS stock held by me (us) at the close of trading of July 13, 2000.

**SUBSTITUTE FORM W-9**

Request for Taxpayer Identification Number ("TIN") and Certification

PART I

Name:_____

☐ Individual/Sole Proprietor                    ☐ Pension Plan

☐ Corporation          ☐          Partnership ☐          Trust

☐ IRA                  ☐          Other

Enter TIN on appropriate line.

For individuals, this is your Social Security Number ("SSN").

For sole proprietors, you must show your individual name, but you may also enter your business or "doing business as" name.  You may enter either your SSN or your Employer Identification Number ("EIN").

For other entities, it is your EIN.

_ _ _ - _ _ - _ _ _ _          or          _ _ - _ _ _ _ _ _ _
Social Security Number                Employer Identification Number

PART II

For Payees Exempt From Backup Withholding

If you are exempt from backup withholding, enter you correct TIN in Part I and write "exempt" on the following line: _____

-11-

PART III
Certification

UNDER THE PENALTY OF PERJURY, I (WE) CERTIFY THAT:

The number shown on this form is my correct TIN; and I (we) certify that I am (we are) NOT subject to backup withholding under the provisions of Section 3406(a)(1)(c) of the Internal Revenue Code because: (a) I am (we are) exempt from backup withholding; or (b) I (we) have not been notified by the Internal Revenue Service that I am (we are) subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me (us) that I am (we are) no longer subject to backup withholding.

NOTE:        If you have been notified by the Internal Revenue Service that you are subject to backup withholding, you must cross out item 2 above.

SEE ENCLOSED FORM W-9 INSTRUCTIONS

The Internal Revenue Service does not require your consent to any provision of this document other than the certification required to avoid backup withholding.

I declare under penalty of perjury under the laws of the United States of America that the foregoing information supplied by the undersigned is true and correct.

Executed this _____ day of _____, in _____,
                                    (Month/Year)                          (City)

_____.
(State/County)

_____
(Sign your name here)

_____
(Type or print your name here)

_____
(Capacity of person(s) signing, *e.g.*, Beneficial Purchaser, Executor or Administrator)

**ACCURATE CLAIMS PROCESSING TAKE A**

**SIGNIFICANT AMOUNT OF TIME**

**THANK YOU FOR YOUR PATIENCE**

-12-

Reminder Checklist:

1.      Please sign the above release and declaration.

2.      Remember to attach supporting documentation, if available.

3.      Do not send original or copies of stock certificates.

4.      Keep a record of your claim form for your records.

5.      If you desire an acknowledgment of receipt of your claim form, please send it Certified Mail, Return Receipt Requested.

6.      If you move, please send us your new address.

# EXHIBIT "A-3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No. 99-2560-CIV-MORENO/DUBE

HOLMES, et al.,

                  Plaintiff,

    v.

DALE S. BAKER, et al.,

                  Defendants.

**SUMMARY NOTICE FOR PUBLICATION**

**EXHIBIT A-3**

TO:    ALL PERSONS WHO PURCHASED OR OTHERWISE ACQUIRED THE STOCK OF AVIATION SALES COMPANY N/K/A TIMCO AVIATION SERVICES, INC. ("AVS" OR THE "COMPANY") DURING THE PERIOD APRIL 30, 1997 THROUGH AND INCLUDING APRIL 14, 2000

YOU ARE HEREBY NOTIFIED, pursuant to an Order of the United States District Court for the Southern District of Florida, Miami Division, that a hearing will be held on _____, 2002, at ___:___ ___.m., before the Honorable Federico Moreno, at 301 North Miami Avenue, Miami, FL 33128 for the purpose of determining: (1) whether the proposed settlement of the claims in the Litigation for: (a) the sum of $11,900,000 in cash, plus accrued interest; (b) 1,250,000 shares of the Company's authorized but unissued common stock; (c) $4,000,000 of the Company's new 8% Junior Subordinated Convertible PIK Notes due 2007; and (d) warrants to purchase 4,150,000 shares of the Company's common stock at the exercise price of $5.16 per share should be approved by the Court as fair, reasonable and adequate; (2) whether the Plan of Allocation is fair, reasonable and adequate and therefore should be approved; (3) whether the application of Plaintiffs' Counsel for an award of attorneys' fees and reimbursement of costs and expenses incurred in connection with the Litigation should be approved; and (4) whether the Litigation should be dismissed with prejudice as set forth in the Stipulation of Settlement dated as of May 6, 2002.

If you purchased or otherwise acquired the stock of AVS during the period April 30, 1997 through and including April 14, 2000, or purchased AVS stock in a secondary offering which became effective June 10, 1999, your rights may be affected by the settlement of the Litigation. If you have not received a detailed Notice of Proposed Settlement of Class Action and a copy of the Proof of Claim and Release, you may obtain copies by: (1) writing to AVS Securities

-1-

Litigation, c/o Gilardi & Co. LLC, P.O. Box 990, Corte Madera, CA 94976-0990; (2) contacting

Gilardi & Co. LLC at (800) 654-5763; or (3) downloading a copy of the Notice and Proof of

Claim Form from www.gilardi.com.  If you are a member of the Class, in order to share in the

distribution of the Net Settlement Fund, you must submit a Proof of Claim and Release no later

than _____, 2002, establishing that you are entitled to recovery.  You will be bound

by any judgment rendered in the Litigation whether or not you make a claim.

If you desire to be excluded from the Class, you must file a request for exclusion by

_____, 2002, in the manner and form explained in the detailed Notice referred to above.

All members of the Class who have not requested exclusion from the Class will be bound by any

judgment entered in the Litigation pursuant to the Stipulation of Settlement.

Inquiries, other than requests for the Notice and Proof of Claim form, may be made to

Plaintiffs' Co-Lead Counsel:

> KAPLAN FOX & KILSHEIMER LLP
> ROBERT N. KAPLAN
> 805 Third Avenue, 22nd Floor
> New York, NY 10022
>
> MILBERG WEISS BERSHAD HYNES
>  & LERACH LLP
> KENNETH J. VIANALE
> 5355 Town Center Road, Suite 900
> Boca Raton, FL 33486
>
> MYRON M. CHERRY & ASSOCIATES
> MYRON M. CHERRY
> 30 North LaSalle Street
> Chicago, IL 60602

**PLEASE DO NOT CONTACT THE COURT OR THE CLERK'S OFFICE**

**REGARDING THIS NOTICE.**


Dated: _____, 2002

                                          _____

                                          BY ORDER OF THE COURT
                                          UNITED STATES DISTRICT COURT
                                          SOUTHERN DISTRICT OF FLORIDA
                                          MIAMI DIVISION

# EXHIBIT "B"

{MI635060;1}

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No. 99-2560-CIV-MORENO/DUBE

H. ROBERT HOLMES, As Trustee for the
Holmes Family Trust, On Behalf of Himself and
All Others Similarly Situated,

                Plaintiff,

    v.

DALE S. BAKER, GARLAN BRAITHWAITE,
HAROLD M. WOODY, JOSEPH E.
CIVILETTO, GEORGE F. BAKER III,
JEFFREY N. GREENBLATT, AVIATION
SALES COMPANY and ARTHUR ANDERSEN
LLP,

                Defendants.

**[PROPOSED] FINAL JUDGMENT AND
ORDER OF DISMISSAL WITH PREJUDICE**

**EXHIBIT B**

This matter came before the Court for hearing pursuant to the Order of this Court filed

_____, 2002, on the application of the parties for approval of the settlement set

forth in the Stipulation of Settlement dated as of May 6, 2002 (the "Stipulation").  Due and

adequate notice having been given to the Class as required in said Order, and the Court having

considered all papers filed and proceedings had herein and otherwise being fully informed in the

premises and good cause appearing therefore, IT IS HEREBY ORDERED, ADJUDGED AND

DECREED that:

1.     This Judgment incorporates by reference the definitions in the Stipulation, and all

terms used herein shall have the same meanings as set forth in the Stipulation.

2.     This Court has jurisdiction over the subject matter of the Litigation and over all

parties to the Litigation, including all members of the Class.

3.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Court has

certified the Class.  The Class is defined as all Persons who purchased or otherwise acquired the

stock of Aviation Sales Company n/k/a Timco Aviation Services, Inc. ("AVS" or the

"Company") during the period April 30, 1997 through and including April 14, 2000, including

those Persons who purchased AVS stock in a secondary offering which became effective June

10, 1999.  Excluded from the Class are Defendants, members of each of the immediate families

of the Individual Defendants, any entity in which any Defendant has or had a controlling interest,

current and former directors and officers of AVS and members of their immediate families,

current and former partners of Arthur Andersen LLP, and the legal representatives, heirs,

successors, or assigns of any such excluded Person or entity.  Also excluded from the Class are

-1-

those Persons and entities listed on Exhibit 1 annexed hereto who have submitted requests to be excluded from the Class.

4.    Pursuant to Federal Rule of Civil Procedure 23, this Court hereby approves the settlement set forth in the Stipulation and finds that said Settlement is, in all respects, fair, just, reasonable and adequate to the Class.

5.    The Court finds that the Stipulation, and Settlement contained therein, is fair, reasonable and adequate as to each of the Settling Parties, and that the Stipulation, and Settlement contained therein, is hereby finally approved in all respects, and the Settling Parties are hereby directed to perform its terms.  The securities portion of the Settlement consideration, consisting of the Shares, Junior Notes, and Warrants, is to be issued in exchange for bona fide outstanding claims; all parties to whom it is proposed to issue such securities have had the right to appear at the hearing on the fairness of the Settlement, and the securities are therefore unrestricted and freely tradeable exempted securities pursuant to Section 3(a)(10) of the Securities Act of 1933, 15 U.S.C. §77c(a)(10).

6.    The Court finds that the Complaint, which was filed on a good faith basis in accordance with the Private Securities Litigation Reform Act and Rule 11 of the Federal Rules of Civil Procedure based upon all publicly available information, is hereby dismissed with prejudice and without costs, as against all Defendants, except as provided in the Stipulation.

7.    Upon the Effective Date hereof, the Lead Plaintiffs and each of the Class Members on behalf of themselves, their heirs, executors, administrators, successors, assigns, officers and directors, and any persons they represent, in all their capacities as such, shall be deemed to have, and by operation of this Judgment shall have, fully, finally and forever released,

-2-

relinquished and discharged all Released Claims against the Released Parties, whether or not

such Class Member executes and delivers a Proof of Claim and Release, or otherwise shares in

the Settlement Fund.

8.      Lead Plaintiffs and Class Members (except those persons and entities listed in

Exhibit 1 who have submitted requests to be excluded from the Class), are hereby permanently

barred and enjoined from instituting, commencing or prosecuting, either directly, indirectly,

representatively or in any other capacity, any and all claims, demands, rights, causes of action or

liabilities, of every nature and description whatsoever, whether based in law or equity, on federal,

state, local, statutory or common law, or any other law, rule or regulation, including both known

claims and Unknown Claims, that have been or could have been asserted directly, indirectly,

representatively or in any other capacity, in any forum by the Class Members, or any of them, or

the successors or assigns of any of them, against any of the Released Parties, which arise out of,

or relate in any way to, or could have been asserted based upon, the allegations, transactions,

facts, events, matters, occurrences, acts, representations or omissions involved, set forth, referred

to, or which relate directly or indirectly to the Litigation, including, without limitation, claims for

negligence, gross negligence, breach of duty of care, breach of duty of loyalty, breach of duty of

candor, fraud, negligent misrepresentation, and breach of fiduciary duty.

9.      Pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"),

and as further provided herein, the Released Parties are hereby finally discharged (i) from the

Released Claims by the Plaintiffs and the Class; and (ii) from all claims for contribution or

equitable indemnification by any person or entity, directly, indirectly, representatively or in any

other capacity, whether arising under state, federal or common law, based upon, arising out of,

relating to, or in connection with the Released Claims of Plaintiffs, the Class or any Class Member. Accordingly, to the full extent provided by the PSLRA, the Court hereby bars all claims for contribution or equitable indemnification: (a) against the Released Parties and (b) by the Released Parties against any other Released Party.

10. Upon the Effective Date hereof, each of the Released Parties shall be deemed to have, and by operation of this Judgment shall have, fully, finally and forever released, relinquished and discharged each and all of the Class Members and Plaintiffs' Co-Lead Counsel from all claims (including "Unknown Claims"), arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement or resolution of this Litigation or the Released Claims.

11. The notice given to the Class was the best notice practicable under the circumstances, including the individual notice to all members of the Class who could be identified through reasonable effort. Said notice provided the best notice practicable under the circumstances of those proceedings and of the matters set forth therein, including the proposed Settlement set forth in the Stipulation, to all Persons entitled to such notice, and said notice fully satisfied the requirements of Federal Rule of Civil Procedure 23 and the requirement of due process.

12. Any plan of allocation submitted by Plaintiffs' Co-Lead Counsel or any order entered regarding the attorneys' fees application shall in no way disturb or affect this Final Judgment and shall be considered separately from this Final Judgment.

13. Neither the Stipulation nor the Settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the

-4-

Settlement: (i) is, or may be deemed to be, or may be used as an admission of, or evidence of, the

validity of any Released Claim, or of any wrongdoing or liability of the Defendants, or (ii) is or

may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of

any of the Defendants in any civil, criminal or administrative proceeding in any court,

administrative agency or other tribunal.  Defendants may file the Stipulation and/or the Judgment

from this action in any other action that may be brought against them in order to support a

defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good

faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue

preclusion or similar defense or counterclaim.

      14.      Without affecting the finality of this Judgment in any way, this Court hereby

retains continuing jurisdiction over (a) implementation of this Settlement and any award or

distribution of the Settlement Fund, including interest earned thereon; (b) disposition of the

Settlement Fund; (c) hearing and determining applications for attorneys' fees, costs, interest and

reimbursement of expenses in the Litigation; and (d) all parties hereto for the purpose of

construing, enforcing and administering the Stipulation.

      15.      The Court finds that during the course of the Litigation, the Settling Parties and

their respective counsel at all times complied with the requirements of Federal Rule of Civil

Procedure 11.

      16.      In the event that the Settlement does not become effective in accordance with the

terms of the Stipulation or in the event that the Settlement Fund is returned to the Defendants,

this Judgment shall be rendered null and void to the extent provided by and in accordance with

the Stipulation and shall be vacated, and in such event, all orders entered and releases delivered

in connection herewith shall be null and void to the extent provided by and in accordance with the Stipulation.

IT IS SO ORDERED.

Dated: _____         _____
                                        THE HONORABLE FEDERICO MORENO
                                        UNITED STATES DISTRICT JUDGE

# EXHIBIT "C"

{MI635060;1}

## SECURITIES TO BE ISSUED BY TIMCO AVIATION SERVICES, INC. ("COMPANY")

**THIS EXHIBIT CONTAINS THE TERMS OF THE NON-CASH SECURITIES TO BE ISSUED AS PART OF THE SETTLEMENT OF THE CLASS ACTION LITIGATION REFERRED TO IN THAT CERTAIN STIPULATION OF SETTLEMENT OF EVEN DATE HEREWITH, OF WHICH THIS EXHIBIT "C" FORMS A PART. TERMS DEFINED IN THE STIPULATION HAVE THE SAME MEANING HEREIN, UNLESS THE CONTEXT OTHERWISE REQUIRES.**

**Common Stock**

The Company will issue 1,250,000 shares (Shares") of its authorized but unissued common stock. The Shares will be issued free of any restrictions on transfer in accordance with the exemption from registration contained in Section 3(a)(10) under the Securities Act of 1933, as amended (the "Act") and will be identical in all respects to the Company's currently outstanding common stock.  Until the Shares are issued in accordance with the Stipulation, the number of shares of common stock issuable hereunder will be adjusted if the Company:

- declares a dividend in common stock on any class of its capital stock;
- issues generally to its stockholders rights, options or warrants to purchase common stock at less than the then current market price of the common stock;
- subdivides, combines or reclassifies its outstanding common stock; or
- distributes to its stockholders evidences of debt, shares of capital stock other than common stock, cash or other assets, excluding distributions in connection with a liquidation of the Company and excluding dividends that the Company pays exclusively in cash.

**8% Junior Subordinated Convertible PIK Notes due 2007**

The Company will issue $4.0 million of its new 8% junior subordinated convertible PIK notes due January 2, 2007 (the "Junior Notes"). The Junior Notes will bear interest at the rate of 8.0% per annum. Interest will be payable, at the Company's option, either in cash or paid-in-kind through the issuance of additional Junior Notes, semiannually on June 30 and December 31 of each year, commencing December 31, 2002, with interest to run from the earlier of the Effective Date or September 30, 2002. The Company expects to pay interest-in-kind on the Junior Notes. If the Company does not pay interest in cash as of an interest payment date, the Company will automatically be deemed to have paid such interest in-kind and additional Junior Notes in the amount of such interest payment will automatically be deemed to be outstanding from such date forward. The Junior Notes will be issued in accordance with the exemption from registration contained in Section 3(a)(10) under the Act and will be freely transferable upon issuance.

For all purposes, the Junior Notes will be structurally subordinated to all current and future senior debt and to the Company's currently outstanding 8% senior subordinated convertible PIK notes due 2006 (the "New Senior Notes"), the Company's currently outstanding 8 1/8% senior

**EXHIBIT C**

subordinated notes due 2008 (the "Old Senior Notes"), and to all future senior subordinated debt issued to replace the New Senior Notes and the Old Senior Notes (limited in aggregate amount to the par value of the New Senior Notes and the Old Senior Notes, plus accrued but unpaid interest thereon (including PIK interest previously paid), plus the costs (not to exceed $10 million) associated with such refinancing).  Other than the senior debt and senior subordinated debt permitted above, no other debt will be issued which is senior to the Junior Notes.

The Junior Notes will be fully and unconditionally guaranteed by the Company's subsidiaries on the same basis as the New Senior Notes. The Junior Notes will be issued pursuant to an indenture containing terms consistent with the indenture for the New Senior Notes but as adjusted to remove all negative covenants, to remove the covenant granting the holders of the notes a seat on the Company's Board of Directors, and adjusted to contain the terms more particularly described herein).

The following is a summary of the redemption and automatic conversion provisions of the Junior Notes.

Redemption

The Junior Notes are redeemable in cash from issuance at any time, at the Company's option, in whole or in part, upon not less than 30 nor more than 60 days notice, at the redemption prices set forth below, which are based upon percentages of the sum of (a) principal amount (including paid-in-kind interest previously paid through the issuance of additional Junior Notes), plus (b) accrued and unpaid interest thereon to the applicable redemption date, if redeemed during the twelve-month period beginning on January 1 of the years indicted below. The applicable cash redemption percentages are as follows: (i) 70% in 2002, (ii) 72.5% in 2003, (iii) 73% in 2004, (iv) 75.625% in 2005 and 77.5% in 2006 and 2007. Further, in addition to the cash redemption price, the Company will issue the following shares of its authorized but unissued common stock ratably to the holders of the Junior Notes upon redemption of the Junior Notes:

| Year of Redemption | Aggregate Number of Shares of Common Stock to be issued ratably to holders of the Junior Notes upon redemption of all of the Junior Notes |
|---|---|
| 2002 and 2003 | 144,331 |
| 2004, 2005, 2006 and 2007 | 103,554 |

The number of shares of common stock issuable upon redemption of the Junior Notes will be adjusted if the Company:

- declares a dividend in common stock on any class of its capital stock;
- issues generally to its stockholders rights, options or warrants to purchase common stock at less than the then current market price of the common stock;
- subdivides, combines or reclassifies its outstanding common stock; or
- distributes to its stockholders evidences of debt, shares of capital stock other than common stock, cash or other assets, excluding distributions in connection with a liquidation of the Company and excluding dividends that the Company pays exclusively in cash.

2

<u>Automatic conversion upon maturity</u>

If the Junior Notes have not been redeemed or repurchased prior to their maturity, the Junior Notes, including those Junior Notes previously issued as paid-in-kind interest and all accrued but unpaid interest, will automatically convert on January 2, 2007 into an aggregate of 9,319,852 shares of the Company's common stock. Holders of Junior Notes will not receive any cash payment representing principal or accrued and unpaid interest upon conversion; instead, holders will receive a fixed number of shares of common stock and a cash payment to account for fractional shares, if any. The cash payment for fractional shares will be based on the closing price of the common stock on the last trading day immediately preceding January 2, 2007. Delivery of shares of the Company's common stock will be deemed to satisfy the Company's obligation to pay the principal amount of the Junior Notes, including Junior Notes previously issued to pay interest-in-kind, and all accrued and unpaid interest. Accrued and unpaid interest will be deemed paid in full, rather than canceled, extinguished or forfeited. The Company will not adjust the conversion rates to account for any accrued and unpaid interest.

<u>Terms of the Junior Notes</u>

| Aggregate principal amount to be issued | $4.0 million |
|---|---|
| Maturity Dates | January 2, 2007 |
| Interest Rate | 8.0% annual rate, payable at the Company's option either in cash or in additional Junior Notes, on June 30 and December 31 of each year, commencing December 31, 2002, with interest to run from the earlier of the Effective Date or September 30, 2002. If the Company elects to pay interest in cash, it will hold that interest into an interest bearing account until distribution to the class or for attorneys' fees, as applicable. If it does not elect to pay interest in cash, it will be deemed to have paid interest-in-kind on those dates. |
| Guarantees | The Company's obligations under the Junior Notes will be fully and unconditionally guaranteed by certain of the Company's wholly owned United States subsidiaries (the same subsidiaries who have guaranteed the New Senior Notes). |
| Redemption at the Company's option | The Company can redeem the Junior Notes at any time after issuance, in whole or part for a combination of cash and shares of common stock, as more particularly described above in "Redemption." |

3

| | |
|---|---|
| Repurchase at option of holders upon a change of control | Upon a change of control, holders of the Junior Notes can require the Company to purchase the Junior Notes at a price equal to the redemption price which the Company would be obligated to pay if the Company redeemed the Junior Notes on the date of such change of control. |
| Conversion | The Junior Notes (inclusive of all accrued but unpaid interest thereon) will automatically convert on January 2, 2007 into an aggregate of 9,319,852 shares of the Company's common stock. |
| Ranking and security | The notes will rank in right of payment behind all of the Company's current and future senior indebtedness, behind the New Senior Notes, the Old Senior Notes and any senior notes issued in the future to refinance the New Senior Notes and the Old Senior Notes (limited in aggregate amount to the par value of the New Senior Notes and the Old Senior Notes, plus accrued but unpaid interest thereon (including PIK interest previously paid), plus the costs (not to exceed $10 million) associated with such refinancing). The Junior Notes will be unsecured. |
| Affirmative covenants | The Junior Notes will include the following required actions:<br><br>• a compliance certificate delivered to the trustee by an officer at least once yearly;<br><br>• maintenance of corporate existence;<br><br>• timely payment of principal and interest on the notes;<br><br>• addition of subsidiary guarantees in specified circumstances; and<br><br>• filing of public reports |
| Events of default | The following will be events of default under the terms of the Junior Notes:<br><br>• The Company's failure to pay principal when due;<br><br>• The Company's failure to pay interest when due, if such failure continues for 30 days; in the event interest is deemed to have been paid in additional Junior |

| | |
|---|---|
| | Notes, the failure to accrue additional notes (before distribution of Junior Notes) or to issue and deliver such additional Junior Notes (after distribution of the Junior Notes) within 60 days after such interest is deemed paid; |
| | • The Company failure to perform any other covenant for 60 days after written notice; |
| | • default by the Company or its subsidiaries on any indebtedness which in the aggregate exceeds $10 million; |
| | • the rendering of a final judgment against the Company or any of its subsidiaries in excess of $10 million which remains unpaid for over 60 days; |
| | • bankruptcy, insolvency or reorganization; or |
| | • any subsidiary guarantee is held unenforceable or invalid or any subsidiary guarantor denies its obligations under its subsidiary guarantee. |
| Remedies upon default | If an event of default occurs, either the trustee or holders of at least 35% in aggregate principal amount of the outstanding Junior Notes may accelerate the maturity of the Junior Notes, provided that if the event of default is not related to certain events of bankruptcy, insolvency or reorganization, the Company may pay the amount due in cash and shares of its common stock in accordance with the provisions of the indenture governing redemption. |

**Common Stock Purchase Warrants**

The Company will issue common stock purchase warrants (the "Warrants") to purchase 4,150,000 shares of the Company's authorized but unissued common stock. Each Warrant will entitle the holder thereof to purchase one share of common stock at an exercise price of $5.16 per share until February 28, 2007. The Warrants shall be redeemable by the Company, at a redemption price of $0.001 per warrant, at any time upon thirty days' prior written notice to the holders thereof, if the average closing price of the Company's common stock, as reported on the principal exchange on which the common stock is traded, equals or exceeds $6.71 per share for twenty consecutive trading days ending three days prior to the date of the notice of redemption. The Warrants will be freely transferable from issuance and will be issued in accordance with the exemption from registration contained in Section 3(a)(10) under the Act. The Company will file a registration statement with the SEC within 90 days after the Effective Date to register the issuance of the shares of common stock underlying the Warrants, and will use its best efforts thereafter to cause such registration statement to become effective under the Securities Act of 1933. The Warrants will be identical to the Company's currently outstanding public common stock purchase warrants and will be issued pursuant to the terms of that certain Warrant Agreement, dated as of February 28, 2002 between the Company and Continental Stock Transfer & Trust Company, as Warrant Agent (which Warrant Agreement will be amended to add the Warrants to the common stock purchase warrants issued thereunder).